In re MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 17, 1904.)

1. MUNICIPAL CORPORATIONS—DISCONTINUANCE OF STREETS—VALIDITY—BURDEN OF PROOF.

The person assailing the validity of a map duly filed discontinuing a street as authorized by Laws 1882, p. 1, c. 410, as amended by Laws 1885, p. 898, c. 530, and by Laws 1887, p. 937, c. 721, has the burden of proving that the prescribed preliminary steps for the discontinuance of streets were not taken.

2. SAME—PRESUMPTIONS.

Where a map discontinuing a street as shown in the record thereof is duly certified, it will be presumed that the certificate was properly acknowledged, which presumption is not overcome by showing that the acknowledgment does not appear on the face of, or attached to, the map as printed in the record.

3. SAME—DAMAGES—WHEN BARRED.

Under Laws 1895, p. 2037, c. 1006, authorizing the extinguishment of the private easements of light, air, and access in streets on the discontinuance of the streets, and providing that, when a street is discontinued by virtue of a map filed under the provisions thereof, the claim for damages must be presented within six years after the filing of the map, and, if the map was filed before the passage of the act, the claim must be presented within two years after the passage of the act, the damages sustained by an abutting owner on the discontinuance of a street by a map filed prior to 1895, because of the loss of the public easement in the street, are barred after the expiration of two years after the passage of the act of 1895, while the damages sustained because of the loss of the private easements in the street by the filing of a map under the act of 1895 are not barred until after the expiration of six years after the passage of the act of 1895.

Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Proceedings for the opening of a street in the city of New York. From an order denying the petition of Elizabeth Ransford for an order directing the commissioners of estimate and assessment to determine the compensation for the closing of a street on which her property abutted, she appeals.  Modified.

The Special Term denied the petition of Elizabeth Ransford for an order to the commissioners of estimate and assessment, directing them to ascertain and determine the compensation that should be made to her for closing Old Quarry Road, or a part of East 178th street, on which the petitioner's property abutted.  The petition was filed by virtue of section 14 of chapter 1006, p. 2051, of the Laws of 1895, which, among other things, provides that whenever proceedings are instituted to open any street laid out upon the permanent map of the city of New York, which shall be contiguous to or in the neigh-

borhood of any lot fronting on any street which has been discontinued or closed, the court which has appointed commissioners of estimate and assessment in respect to such opening may, upon the application of any person interested in the land fronting upon the street discontinued or closed, order and provide that the commissioners shall ascertain and determine the compensation which should justly be made to such person for his damage by reason of the closing of such street. The petitioner owns a plot of land 37 feet in width by 100 feet in depth, fronting on a street laid out on a map as Valentine avenue, in the block bounded by East 179th street on the north, East 178th street on the south, Webster avenue on the west, and Vanderbilt avenue on the east, together with all rights of way, easements, and privileges, public and private, in the said highway. Valentine avenue and Quarry Road are the same street, the fee of which was never acquired by the city, nor was it owned by the petitioner, but is owned by some other person. Prior to 1893, however, it had been for 40 years continuously in use as a public highway. The street substituted for the former Quarry Road or Valentine avenue or East 178th street was also called East 178th street on a map filed in 1890, and now retained on the final maps of the 23d and 24th wards. Pursuant to chapter 604, p. 831, Laws 1874, the commissioners of the department of public parks prepared and filed a map showing streets and roads in these wards in which the petitioner's premises are situated. This map, dated April 17, 1878, was filed in the office of the register of New York county on February 28, 1879, where it is known as "Filed Map No. 825." On this map there is laid out a street designated as 178th street, embracing that part of the old Valentine avenue or Quarry Road which was in front of petitioner's premises. By chapter 721, p. 937, of the Laws of 1887, the department of public parks was further authorized to change the location, width, course, etc., of any street, avenue, road, etc., in the wards mentioned, the title of which shall not have been acquired by the mayor, aldermen, and commonalty of the city of New York, and to discontinue and close any such street, avenue, and road. Accordingly, on June 11, 1890, the department of parks prepared and filed a map entitled "Map or plan showing change of East 178th street from Vanderbilt Avenue West to Webster Avenue and its extension to Burnside Avenue and location of bridge across the New York and Harlem Railroad in the 24th Ward of the City of New York." This map was signed by the topographical engineer of the department of public parks, and was filed in the register's office on June 12, 1890, in the office of the Secretary of State on June 30, 1890, and in the department of public parks on June 11, 1890. On this map appears the following certification: "W. Hutchins, President of the Board of Parks, certifies that the map is one of three similar plans and profiles with explanatory remarks caused to be made by the Commissioners of Department of Public Parks showing change of East One Hundred and Seventy-eighth street from Vanderbilt Avenue east to Webster Avenue, its extension to Burnside Avenue and location of Bridge over the New York and Harlem Railroad in the Twenty-fourth Ward of the City of New York as established by said Commissioners under authority of Chapter 721 of the Laws of 1887 which plans and profiles with explanatory remarks are required to be made and certified and are hereby certified in pursuance of chapter 410 of the Laws of 1882." The purpose of this map was to discontinue and close that part of Vanderbilt avenue or Old Quarry Road which was north of the northerly line of new East 178th street. The street shown as 178th street on the map of 1890 was legally opened in 1893, and from that time, according to the allegations of the moving papers, that portion of Old Quarry Road separating the petitioner's premises from East 178th street ceased to be a street or road in use. On June 12, 1895, the Legislature enacted chapter 1006 of the Laws of 1895. The purpose of this act was to discontinue and close streets in such a manner as to extinguish the easements of light, air, and access which are appurtenant to abutting lots on public streets, and which ordinarily survive the discontinuance or closing thereof. Section 5 (page 2041) of this act provides that, where a street is discontinued by virtue of a map filed under the provisions thereof, the claim for damages must be presented within six years after the filing of such map, but, where such a map was filed before the passage of the act of 1895, the claim must be presented within two years after the passage of

the act. The petitioner's claim was presented more than two years, but within six years, after the passage of the act of 1895; and the Special Term decided upon the facts that the two-years statute of limitations applied, and, on the ground that the petitioner was too late in presenting her claim, denied her application, and from the order thus entered she appeals.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

S. Livingston Samuels, for appellant.

John P. Dunn, for respondent.

O'BRIEN, J. The question presented on petitioner's claim for damages is whether, under the provisions of chapter 1006, p. 2037, of the Laws of 1895, the two-year or the six-year statute of limitations is applicable. The appellant insists that map No. 171, filed on June 12, 1890, was not a legal map, and therefore was ineffectual to discontinue Old Quarry Road or Vanderbilt avenue or a part of East 178th street. This map was made under the authority of section 671, c. 410, p. 187, Laws 1882, as amended by chapter 530, p. 898, of the Laws of 1885, and chapter 721, p. 937, of the Laws of 1887. The two grounds upon which the petitioner's claim of illegality are based are, first, the failure of the city to show that the notice of publication which was necessary under chapter 721, Laws 1887, was published in the daily papers; and, second, the failure to have upon the map, as provided by section 672, c. 410, p. 188, Laws 1882, a certificate made by the president of the park board before a person authorized by law to take acknowledgments of deeds.

It is conceded that, if the map was properly filed in 1890, it effectually discontinued the street in question as a public street; but, under the decisions, there would still survive the private rights of light, air, and access which are appurtenant to a lot abutting upon a public highway. Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052; Holloway v. Delano, 139 N. Y. 412, 34 N. E. 1047, 1052; Matter of Mayor, 28 App. Div. 143, 52 N. Y. Supp. 588. These are authorities for the proposition that, prior to the passage of chapter 1006 of the Laws of 1895, the effect of the closing of a street in the city of New York was that the public easement in the street was alone extinguished, and that the private easements therein of the owners of abutting land, of light, air, and access, remained. The act of 1890 did not authorize the extinguishment of these private easements, and the Legislature of 1895 evidently intended to supplement the law of 1890 so as to enable the city to adopt a general and comprehensive scheme for the permanent laying out and opening of new streets, and discontinuing of old streets that interfered with such plan. Taking the two acts, therefore, of 1890 and 1895, they were sufficient, where their provisions were followed in closing old streets, to destroy both public rights and private easements of abutting owners.

Whether Quarry Road or East 178th street was discontinued as a public street necessarily depends upon a determination whether the map as filed in 1890 was legally filed. That it was filed in the proper office is conceded, and, with respect to the publication of the notice in the papers as required by the existing law, we think that the burden of

showing that the legal steps prescribed as preliminary to filing were not taken, would be on the one who assailed the legality and regularity of the filing, and that at the outset he would be met by the presumption in favor of the legality of the public map which had thus been filed and acted upon as a valid document. With respect, therefore, to the notice of publication, we think that the appellant is in error in saying that the burden rested upon the city to prove such publication.

In the recent case of City of New York v. Streeter, 91 App. Div. 206, 86 N. Y. Supp. 665, wherein an action was brought to recover a personal tax, and the question presented was the extent of proof on the part of the city necessary to establish a prima facie case, it was said:

"With respect to the acts of judicial tribunals, as well as those of constituted boards, it has been frequently held that they will be regarded as presumptively valid until questioned or assailed, under the maxim of 'Omnia præsumuntur legitime facta donec probetur in contrarium.' * * * In Wood v. Moorehouse, 45 N. Y. 368, the court says: 'Neglect of duty by a public officer will not be presumed, but must be proved, and in support of his acts the familiar maxim, "Omnia præsumuntur rite esse acta," stands for evidence of the fact in the absence of any other evidence. When a person is required to do an act, the not doing of which would make him guilty of a criminal neglect of duty, it shall be intended that he has duly performed it unless the contrary be shown. "Stabit præsumptio donec probetur in contrarium." * * * The defendant * * * rested * * * upon what he claims to be omissions of the plaintiff in furnishing in minutest detail proof of the successive steps that would end in duly imposing the tax upon the defendant. It will be seen, therefore, that there is no merit in the defendant's position. * * * We deem it unnecessary to follow the appellant in the detailed argument as to the respects in which he thinks there was failure to prove regularity in the imposition of the tax, such as proper publication and other minor details."

And in City of New York v. Vanderveer, 91 App. Div. 308, 86 N. Y. Supp. 659, wherein also it was sought to enforce a personal tax, it was said:

"The requirement is that they [the taxbooks] shall be kept open, and, as the statute is silent with respect to the evidencing of such acts, * * * the legal presumption applies that the officers have performed their duty in this respect, and that the burden, therefore, is cast upon the defendant to make it otherwise appear, if such is the fact. McLaughlin v. Miller, 124 N. Y. 510 [26 N. E. 1104]; Hand v. Supervisors of Columbia County, 31 Hun, 531; Wood v. Terry, 4 Lans. 80."

The rule is thus stated in Chase v. Lord, 77 N. Y. 1, wherein a provision of chapter 308, p. 441, Laws 1849, for the incorporation of insurance companies, was under consideration:

"The legal presumption is that all statutory conditions have been complied with. This presumption continues until the contrary is shown. No duty rested upon the stockholder to do this, and it is incumbent on the plaintiff to establish a noncompliance with the provisions of the statute before he can charge the defendant. Bruce v. Driggs, 25 How. Prac. 71."

These cases apply with equal force to the suggestion that it was incumbent on the city to prove, with respect to the filing of the map in 1890, due publication, because, it appearing that the map was filed in the proper office, it will be presumed that the necessary preliminary steps have been taken by the proper officials.

The more serious question is that relating to the acknowledgment of the certificate which it is insisted should appear on the map. The

map shown in the record is certified by W. Hutchins, president of the board of parks, but such certification upon the face of the map does not appear to have been acknowledged before an official entitled to take acknowledgments of deeds.   There is nothing in the statute which requires the acknowledgment to appear upon the face of the map, and it could therefore have been taken upon a separate piece of paper; and it is not improbable that this was done, and the separate acknowledgment filed at the same time with the map.   With respect to the filing of a map which requires to be acknowledged, just as with a deed, it is the duty of the recording officer, or the person in charge of the office wherein public documents are filed, to see to it that the legal requirements which entitle it to be filed have been complied with.   And we do not think, from the mere fact that the acknowledgment does not appear upon the face of the map, that we would be justified in concluding that the department making and filing the map, or that the officers who accepted it for filing, failed to perform the duty devolving upon them of seeing to it that the legal requirements were observed.   Here, too, the presumption that officers upon whom the law imposed a duty performed it may be invoked; and this presumption is not destroyed or rebutted by the fact that the acknowledgment does not appear upon the face of, or attached to, the map as printed in the record.   In this connection we have, in addition to the authorities above referred to, the case of People v. Palmer, 52 N. Y. 83, where certificates were given by commissioners for services rendered; and although one of the five commissioners had died, and another had removed from the state, it was held that, "the three commissioners still in office having joined in the certificate, the presumption is that the act was regularly done, and at a meeting of all." Downing v. Rugar, 21 Wend. 178, 34 Am. Dec. 223.

In our view, therefore, the street in question, by the filing of the map in 1890, was closed and discontinued as a public street.   There remained, however, as held by the authorities which we have cited, the private easements which the petitioner had and enjoyed up to their final destruction by the filing of the map under the act of 1895.   As the damages which she suffered by the destruction of these private easements were due to the filing of the map under the provisions of the Laws of 1895, we do not see why she was not entitled to have the six-years limitation apply to her claim therefor.   In other words, the private easements of the petitioner over the land of the discontinued street were lost to her by the filing of the map of 1895, and not that of 1890. We think, therefore, that by the filing of the map in 1890 the petitioner lost only her public easements in the street which was discontinued as a highway.   This, being a damage suffered before the enactment of chapter 1006, Laws 1895, was, under the provisions of section 5 of that act, barred in two years after the passage thereof.   But her private easements of access over the soil of the discontinued street to the new street remained to her in the full enjoyment thereof.   Of this right she was deprived by the filing of the map of December, 1895, which was filed under the provisions of said chapter 1006.   This being a new and additional damage caused to her by the filing of that map, she had, under the provisions of the said section 5, six years after the filing of the said map in which to present her petition for compensation for the

deprivation of those private easements. To this extent we think the petitioner was entitled to relief, and, for the reason that her petition was in all respects denied, we think that the order appealed from should be modified by denying the application so far as it relates to any damages which she lost by the discontinuance of the street as a public highway, but granting it as to damages which she may have sustained by the destruction of her private easements. As modified, the order should be affirmed, without costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I dissent so far as it is held that by chapter 1006, p. 2037, of the Laws of 1895, the private easements appurtenant to the petitioner's property over any portion of a street were destroyed, or that by reason of that act the petitioner can recover in this or any proceeding against the city any sum of money on account of such private easements. These easements were appurtenant to the petitioner's property, and a part of it. The Legislature could not by a legislative act appropriate those private easements without compensation; nor could the Legislature require that money raised by taxation be applied to the purchase of a private easement owned by the petitioner for any purpose, except a public use. The result of allowing the petitioner in this proceeding to have the value of the private easement appurtenant to her property over the discontinued street assessed would be to impose a tax for the amount paid to her upon abutting property, which would be taxing the abutting property for other than a public use. I dissent, therefore, from any modification of this order, and think it should be affirmed.