(160 App. Div. 96)

### In re OLINGER.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

1. MANDAMUS (§ 10*)—RIGHTS OF RELATOR—STREETS—CLOSING—DAMAGES.

To entitle a property owner to mandamus compelling the corporation counsel of the city of New York to commence proceedings for the ascertainment of his damages by the closing of a street as provided in the Street Closing Act (Laws 1895, c. 1006), it must appear that the relator is entitled to more than nominal damages.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 37; Dec. Dig. § 10.*]

2. PLEADING (§ 8*)—COMPLAINT—CONCLUSION OF LAW.

An allegation, in an application for mandamus to compel the corporation counsel of the city of New York to institute proceedings to ascertain the relator's damages by the closing of a street, that the street was a lawful highway, is a conclusion of law not necessarily established by a showing that it was opened for public travel.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½, 68; Dec. Dig. § 8.*]

3. EMINENT DOMAIN (§ 100*)—STREETS—CLOSING—DAMAGES.

The Street Closing Act of 1895 (Laws 1895, c. 1006), providing for the ascertainment of damages in case of the discontinuance of public highways, does not apply to mere private ways, but only to those streets in which the public has acquired some interest or is bound to maintain as streets.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 256–264, 267; Dec. Dig. § 100.*]

4. DEDICATION (§ 31*)—ACCEPTANCE—NECESSITY.

The filing by the owners of a subdivision of a plat showing streets will not make the land so dedicated public streets and impose upon the municipality the burden of maintaining the streets, in the absence of any acceptance.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 64, 65; Dec. Dig. § 31.*]

5. DEDICATION (§ 35*)—ACCEPTANCE—WHAT CONSTITUTES.

The preparation by municipal authorities of a map showing as discontinued streets which property owners had offered to dedicate when they platted their land will not establish an acceptance of the dedication by the municipality.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68–71, 75, 76; Dec. Dig. § 35.*]

6. DEDICATION (§ 44*)—ACCEPTANCE—EVIDENCE.

In mandamus to compel the corporation counsel of the city of New York to institute proceedings to ascertain the damages for the closing of a street which property owners had attempted to dedicate when they platted their land, evidence *held* insufficient to show any acceptance by the municipality.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

7. EMINENT DOMAIN (§ 271*)—STREETS—CLOSING OF STREETS.

A street used by the public, but not accepted by the municipality as a legal street, is not legally closed until other streets laid out to serve the same locality are opened.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 725–736, 741; Dec. Dig. § 271.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. EMINENT DOMAIN (§ 284*)—STREETS—DISCONTINUANCE—DAMAGES—RIGHT TO SUE.

Claims for the closing of a street by property owners whose land was included in a block wholly surrounded by new streets do not accrue until the new streets bounding the block have been actually opened for public use; hence one whose grantor did not acquire the land until after the physical opening of the new streets can maintain no action for compensation under Street Closing Act 1895 (Laws 1895, c. 1006); his grantor having nothing to assign him.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 789, 790; Dec. Dig. § 284.*]

9. MUNICIPAL CORPORATIONS (§ 663*)—STREETS—FEE.

Where a municipality never acquired the fee of land used as a street, the fee remained in the abutting owners each of whom took to the center.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. § 663.*]

10. EMINENT DOMAIN (§ 100*)—STREETS—DISCONTINUANCE—DAMAGES.

Street Closing Act 1895 (Laws 1895, c. 1006) § 2, provides that, when a street has been finally closed, the owner in fee of the land within the boundaries thereof may occupy the same as fully as if it had not been used. A street of which the municipality had never owned the fee was discontinued, and another street which ran obliquely and occupied part of the old one was opened. *Held*, that an abutting owner who was entitled under the act to use the land up to the new street was not entitled to damages, his usable land having been increased, and no easements of light, air, and access having been taken away.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 256–264, 267; Dec. Dig. § 100.*]

11. EMINENT DOMAIN (§ 100*)—STREETS—DISCONTINUANCE—DAMAGES.

Under Street Closing Act 1895 (Laws 1895, c. 1006), requiring the city of New York to acquire and pay for rights, easements, or interests taken or damaged, an abutting owner, while entitled to compensation for quasi private easements such as light, air, and access, is not entitled to compensation for the destruction of private easements arising from grants between the several owners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 256–264, 267; Dec. Dig. § 100.*]

12. EMINENT DOMAIN (§ 100*)—DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS—WHAT CONSTITUTES.

The destruction of private rights belonging to an owner of property abutting on street, such as his easements of light, air, and access, entitles him to compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 256–264, 267; Dec. Dig. § 100.*]

Appeal from Special Term, New York County.

Application by Herman H. Olinger for mandamus against the Corporation Counsel of the City of New York. From an order granting the peremptory writ, respondent appeals. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Joel J. Squier, of New York City, for appellant.
Leo C. Weiler, of New York City, for respondent.

SCOTT, J. [1] The order appealed from must rest, if it be sustained, upon the proposition that the relator has sustained damages by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

reason of the alleged closing of Madison avenue of such a nature, as to entitle him, as matter of strict right, to the ascertainment of such damages in the manner provided in the Street Closing Act (chapter 1006, Laws of 1895). The expense of such a proceeding to the city of New York, or to the property owners who are subject to the payment of assessments, is very considerable, and, before the relator is entitled to compel the incurring of such expense, it is no more than reasonable that he should be required to affirmatively show that he is entitled to damages and that such damages are more than nominal.

[2] The first objection which the city urges against the maintenance of the proceeding sought to be compelled is that it is not shown that Madison avenue, in respect of which the relator seeks damages, is or ever was a public street. The petition states:

"That the said Madison avenue between 180th and 181st streets as aforesaid had been a lawful public highway of the state of New York, and actually open and in public use by the people of the state of New York since in or about the year 1850."

It is evident upon its face that this is a statement of mixed law and fact. That the street or road called Madison avenue was actually open as a street or road and in public use from the time stated is the statement of a fact, but the allegation that it was "a lawful public highway" is a conclusion of law, not necessarily following upon the allegation of public use, for a street or road, never adopted or laid out, as a public highway may be actually open and in public use.

[3] It is quite apparent, and has been so held by this court, that the Street Closing Act of 1895 did not relate to mere private ways, but only to those streets in which the public has acquired some interest, or in relation to which there has been imposed upon the public or the city a duty to maintain them as public streets. Matter of the Mayor, 182d Street, 41 App. Div. 586, 58 N. Y. Supp. 736.

[4] In that case, as in the present, there was no evidence or allegation that the street in respect of which damages were claimed had ever been acquired by the city, or had ever been adopted by the city as a public street by inclusion as a street in any official map or plan or in any other manner. In that case, as in the present, the only record showing the street as such, was to be found in a private map made and filed by the owners of the bed of the street and of the adjacent property. This did not make it a public street, nor impose upon the city the duty of keeping it open and maintaining it as a public street, for obviously the owners of property cannot impose a street upon the city, against its will, by designating the street on a private map, or even by using it or throwing it open to the public as a right of way. Until the city formally adopts it, or indicates in some way its acceptance of the attempted dedication of the street for street purposes, it remains a private and not a public way and is not within the purview of the Street Closing Act.

[5, 6] So far as appears from the petition and other papers in the case, Madison avenue between 180th and 181st streets never appeared upon any official street map or plan until 1879, when the department of parks filed a map showing the public streets, roads, and places with-

in a part of the Twenty-Fourth ward of the city of New York, as laid out, classified, and closed by said department of parks pursuant to law. On this map or plan the streets, avenues, and roads laid out by the department were shown in red, and were thereafter to constitute the only legal public streets, avenues, and roads in the territory covered by the plan.

Madison avenue was not thus shown, and therefore was not, by virtue of that plan, adopted and laid out as a public street. It was, however, indicated in gray, by means of india ink shading. As to it, and other streets similarly indicated, a legend upon the plan stated that:

"The roads and portions of roads which are discontinued and closed by said commissioners are indicated by india ink shading."

This certainly did not amount to an admission, binding upon the city of New York, that the roads thus indicated had ever been legally opened or acquired public city roads. At the most, the legend I have quoted meant no more than that the roads and parts of roads shown in gray were not included in the system of roads, streets, and avenues shown on the map as those which should thereafter be the legally established city roads, streets, and avenues.

Madison avenue differs in an important respect from Seventh and Eighth avenues and Walnut street considered in the Walton Case, 131 App. Div. 696, 116 N. Y. Supp. 471. As in the present case, those streets were first shown on private maps. When the park department came to make an official map or plan of the territory in 1879, it included them as streets then existing and to be continued, instead of indicating them, as it did Madison avenue, as streets to be discontinued. It was this inclusion of the old streets as a part of the new plan which was deemed to establish an acceptance of the attempted dedication by the former owners. See, also, Matter of Department of Public Parks, 53 Hun, 556, 6 N. Y. Supp. 779. No such acceptance is shown in the present case. On the contrary, the park department, while recognizing the physical existence of the proposed street, expressly repudiated it as a public street and refused to continue it as a part of the new plan. In 1895, after the passage of the Street Closing Act, the commissioner of street improvements for the Twenty-Third and Twenty-Fourth wards filed a map or plan of projected roads, streets, and avenues in the same territory, which were duly approved and filed in accordance with law. On this map or plan, according to the petition:

"The lines of Madison avenue between 180th and 181st streets were omitted, and said street was shown as discontinued, closed, and abandoned."

There is therefore a complete failure of proof that Madison avenue between 180th and 181st streets ever was a public street in which the city had ever acquired any interest, or one as to which the city had ever assumed or had imposed upon it any duty to keep it open or maintain it as a public street or highway. On the contrary, the evidence is all to the effect that it was originally laid out as a private road upon a map filed by the owners of the bed of the road and the adjacent property in or about the year 1850; that it was never acquired or accepted, by the city of New York, or other public authority, as a public

street or road; and consequently that it remained until the end as merely a private road or right of way over which the city exercised no control and in which the city had no interest, and which could have been closed and discontinued at any time by the owners of the adjacent property. If it be said that the filing of the private map in 1850 indicated an intention on the part of the then owners to dedicate the strip of land as a public road, the answer is that there is no evidence that the city ever accepted the dedication, and without such acceptance the dedication remained ineffectual to impose upon the city any duty or obligation with respect to the road, or any liability for damages for refusing to accept it and include it in the permanent street plan. The relator is therefore confronted at the threshold of his case, with the objection that he has failed to show that Madison avenue was ever a public street or road the closing of which fell within the purview of the Street Closing Act of 1895.

[7] A second objection advanced by the corporation counsel is that, even if it be assumed that Madison avenue was a legally established public street, it does not appear that the relator or his assignor was the owner of the property at the time the damage accrued. As has been said, Madison avenue was indicated as a discontinued street both on the map or plan filed in February, 1879, and on that filed on November 2, 1895. The block upon which the property in question is located is shown on the map of 1895 as bounded by East 180th street, Bathgate avenue, Washington street, and East 181st street. None of these were open and in public use when the final map was filed on November 2, 1895; the first one to be physically opened for public use being East 180th street, which was so opened on June 28, 1898. Madison avenue was not therefore legally closed until June 28, 1898, when the first of the new streets surrounding the block was physically opened, and it was then and not until then that the right to damages accrued. Johnson v. Cox, 42 Misc. Rep. 301, 86 N. Y. Supp. 601; Id., 196 N. Y. 110, 89 N. E. 454; Matter of City of New York, 192 N. Y. 459, 85 N. E. 755; Matter of Mayor, Walton Avenue, 131 App. Div. 696, at page 721, 116 N. Y. Supp. 471, affirmed 197 N. Y. 518, 90 N. E. 59.

[8] The question when the right to damages accrues under the Street Closing Act was fully discussed by Mr. Justice Laughlin in the Walton Avenue Case, supra. Two classes of claims were there considered. One class related to property included within a block, as shown on the filed map or plan, which was bounded on one side by Jerome avenue, a public street then in actual use and which was retained as a public street under the new plan. Another class of claims related to property included within a block wholly surrounded by new streets. It was held that as to the first class of claims the damage caused by the closing of old streets within the block accrued immediately upon the filing of the map showing the intent to discontinue, but as to the second class of claims that the damage did not accrue until one of the new streets bounding the block had been actually physically opened for public use. The relator's claim falls within the second

class, and unless his assignor had title on June 28, 1898, she had no claim for damages to assign.

[9, 10] If, however, we assume that Madison avenue between 180th and 181st streets was at some time a legally established public road or street, and that relator's assignor was the owner of property abutting on it when it was legally closed, yet in my opinion it does not appear that relator or his assignor suffered any damage in consequence of such closing (beyond perhaps merely nominal damage) for which a claim exists against the city of New York. The property with respect to which relator claims damages had a frontage on Madison avenue. The new plan substituted for Madison avenue a new street known as Bathgate avenue running diagonally to Madison avenue in such a way that a portion of Madison avenue was discarded and another portion was included within the lines of the new street. The portion discarded lay in front of relator's premises and abutted thereon. As has been seen, there is no claim that the city of New York ever acquired the fee title to the land used as Madison avenue. The presumption therefore is, and such is undoubtedly the actual fact, that the fee of the soil in Madison avenue belonged to the abutting owners; the owner on each side owning the fee of the street to the center thereof, subject to its use for street purposes. Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33. Section 2 of the Street Closing Act provides that, when a street has been finally closed and discontinued in the manner provided by the act, "the owner in fee of the land or soil within the boundaries thereof may inclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used." Accordingly, as soon as Madison avenue became finally closed (if it ever was a public street), which was on June 28, 1898, when the first new street bounding the block was physically opened and put in use, plaintiff's assignor, or whoever else was then the owner of the plot as to which damage is claimed, was legally entitled, so far as concerns the city of New York or the public generally, to inclose and use that portion of Madison avenue lying in front of the property and between it and Bathgate avenue as fully as if the same had never been used as a street. Schonleben v. Swain, 130 App. Div. 521, 115 N. Y. Supp. 23, affirmed 198 N. Y. 621, 92 N. E. 1101. Where, then, was any damage done to the owner of the abutting lot? His or her usable land was not diminished, but actually increased in area. No easements of light, air, and access were taken away, for the property freed from all such easements and usable was carried up to Bathgate avenue, a new street, with all the easements for street purposes commonly appurtenant to land abutting upon a street or highway.

[11, 12] It is claimed, however, that there still remained appurtenant to the property of relator's assignor certain private easements for which he is entitled to compensation. This leads to a brief consideration of what is to be compensated for, under the Street Closing Act. There has been, as it is claimed, considerable confusion in the cases as to whether or not the city is required to acquire and pay for what are known as "private easements." Such confusion as there is has arisen from the fact that it has not always been kept clearly in

mind just what is meant by the words "private easements." It is well settled that an abutting owner has two distinct kinds of rights in a highway or street, resulting from such contiguity and not resting in any grant—a public one which he enjoys in common with all other citizens, and certain private rights which arise from the ownership of property contiguous to the highway or street by virtue of such contiguity. These so-called private rights increase the value of the abutting property, are private property, and, if they are destroyed or greatly injured without due process of law, damages may be recovered for the injury. Woodruff v. Paddock, 130 N. Y. 618–625, 29 N. E. 1021. It is upon this principle that the long line of Elevated Railroad Cases rests, and, as held in these cases, it makes no difference in the rights of the abutters whether the fee of the street is owned by the municipality or by the abutting owner. It is easements of this latter class as to which it has been repeatedly held that upon the discontinuance of a public street the abutting owner is entitled to damages for his private easements, they being called private, as contradistinguished from public, easements, because they are appurtenant to the property of the individual abutter, and not included in the rights to which the whole public is entitled. For such "private" easements, when destroyed by the discontinuance of an established public street, the abutter is entitled to recover damages. Matter of Vanderbilt Avenue, 95 App. Div. 533, 88 N. Y. Supp. 769; Id., 119 App. Div. 882, 104 N. Y. Supp. 1133; Id., 189 N. Y. 551, 82 N. E. 1133; Johnson v. Cox, 196 N. Y. 110, 89 N. E. 454.

There remains, however, in many cases, and very probably in the case of property abutting upon Madison avenue, a third class of easements, also private in their nature, which arise from express or implied grants between the owners of the property confined and abutting upon a street or avenue. Such private easements are created, for instance, by the conveyance of a lot with reference to a map or plan, in which one of the boundaries of the lot conveyed is the abutting street. With this class of private easements the city has usually no concern either to abolish or to preserve them, and it certainly cannot be compelled, against its will, to compensate for them. The distinction between these two classes or private easements was very clearly made in Johnson v. Cox, supra, where both were present. That case, reaffirmed in the Matter of Walton Avenue Case, 197 N. Y. 518, 90 N. E. 59, contains the latest authoritative pronouncement by the Court of Appeals as to what easements are and what are not to be compensated for when a public road is discontinued and closed. The same subject has recently been exhaustively considered, with a review of the precedent authorities, by Mr. Justice Laughlin writing for a unanimous court. Matter of City of N. Y., New Avenues, 153 App. Div. 164, 138 N. Y. Supp. 107.

The easements, sometimes called private but really special or quasi public, of light, air, and access arising from the fact that private property abuts upon a public highway are to be compensated for if the highway is closed and the easements thus destroyed. Other private easements arising from express or implied grant are not destroyed by

the closing of the highway and are therefore not to be compensated for, and this is true although the strictly private easements may affect the same property, and confer the same rights over the same strip of land as those arising from mere contiguity to the street. As a general thing, no public interest requires the extinguishment of the strictly private easements of the class last defined. If the property respecting which the relator claims damages is subject to easements of this nature, it is not due to the existence of a highway in front of the property, but to the fact that his predecessors in title, and the owners of other abutting property elected, as between themselves, to create reciprocal easements over the bed of the highway. These are not extinguished by the legal closing of the street in a public highway.

I am therefore of the opinion that the order should be reversed and the relator's petition for a writ of mandamus denied:

First. Because he has failed to show that Madison avenue was ever a public street.

Second. Because he has failed to show that his assignor ever had a claim for damages for closing Madison avenue.

Third. Because, assuming that he can furnish satisfactory proof upon both of the foregoing propositions, it clearly appears that the property with respect to which he claims damages suffered no real damage from the closing of Madison avenue, for, since the moment that avenue was legally closed, new and equally beneficial easements sprang into existence over the new Bathgate avenue.

Under these circumstances, it would, as I think, be an abuse of discretion to compel the city to go to the great expense of instituting a special proceeding as prayed for by relator.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion denied, with $50 costs. All concur.