In the Matter of Acquiring Title to WALLACE AVENUE, BARNES AVENUE, MATTHEWS AVENUE and MULLINER AVENUE in the Twenty-fourth Ward, Borough of The Bronx, City of New York.

THE CITY OF NEW YORK, Appellant; MARY E. FARRELLY, Respondent.

Streets — private ways — Street Closing Act (L. 1895, ch. 1006) construed and held not to apply to private ways — the act is a general statute.

1. The petitioner is the owner of certain lots fronting on Graham street in the borough of The Bronx, New York city, which street, she alleges, was closed by the filing of a map under the Street Closing Act (L. 1895, ch. 1006). She asks that the commissioners of estimate and appraisal appointed in the proceeding be directed, as provided in section 14 of the statute, to ascertain and determine the compensation which she should receive for the closing of the street. Upon examination of the facts, *held*, *first*, that Graham street, as shown on a map filed by the owner of a tract of land in the office of the county register, and which is claimed as a public street also on the ground of recognition by the authorities and user, was not a public street but was a private way and nothing more; *second*, upon examination of section 2 of the Street Closing Act, that such act does not apply to private ways; hence plaintiff is not entitled to compensation. (*People* v. *Underhill*, 144 N. Y. 316, followed; *Barber* v. *Woolf*, 216 N. Y. 7, distinguished.)

2. The Street Closing Act of 1895 purports to be a general statute, although now applicable only to New York city. Yet it may come in the future to apply to other cities of the state. Therefore, section 18 as well as the other sections of the act, should not be read solely with reference to the New York city charter. It should be held to refer to streets of the same character as those mentioned in section 2, which are closed by the filing of a map under that section.

*Matter of Wallace Avenue,* 179 App. Div. 172, reversed.

(Argued November 15, 1917; decided December 11, 1917.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 13, 1917, which affirmed an order of Special Term directing the commissioners of estimate and assessment in the above-entitled proceeding to ascertain and determine the compensation which should be made to the respondent for damages to her property by reason of the closing of a street.

The following question was certified: " Were the easements for street purposes of Mary E. Farrelly in and over Graham street extinguished by operation of the provisions of chapter 1006 of the Laws of 1895? "

The facts, so far as material, are stated in the opinion.

*Lamar Hardy, Corporation Counsel (Joel J. Squier and James Regan Fitz Gerald of counsel), for appellant.* Chapter 1006 of the Laws of 1895 does not authorize the closing of private streets. (*Holloway* v. *Southmayd,* 139 N. Y. 390; *Schonleben* v. *Swain,* 130 App. Div. 521; 198 N. Y. 622; *Matter of Mayor, etc.,* 41 App. Div. 586; *Matter of Walton Ave.,* 131 App. Div. 696; *Matter of Olinger,* 160 App. Div. 96.) Graham street was never a public street. (*People* v. *Underhill,* 144 N. Y. .316; *Matter of Olinger,* 160 App. Div. 96; *Matter of Juniper Avenue,* 162 App. Div. 291.)

*James F. Donnelly and Frederick J. Flynn for respondent.* Graham street was a public street by reason of the

dedication thereof by the adjoining owners and the acceptance thereof by the public authorities. (*People* v. *Underhill*, 144 N. Y. 316; *Uhlefelder* v. *City of Mt. Vernon*, 76 App. Div. 348; *Flack* v. *Village of Green Island*, 122 N. Y. 107; *City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; *Matter of Hunter*, 163 N. Y. 542; *Matter of Mayor*, etc., 41 App. Div. 586; *Matter of Vil. of Olean* v. *Steyner*, 135 N. Y. 341; *Palmer* v. *East River Gas Co.*, 115 App. Div. 677; *Pomfrey* v. *Vil. of Saratoga Springs*, 104 N. Y. 459; *Smith* v. *City of Buffalo*, 90 Hun, 118; *Robinson* v. *Mayor*, etc., 59 N. J. Eq. 56.) Chapter 1006 of the Laws of 1895 authorizes compensation for damages caused by the closing of private streets and the determination of the court below was correct even though Graham street had not been accepted by the public authorities. (*Barber* v. *Woolf*, 216 N. Y. 7; *Astor* v. *Thwaites*, 170 App. Div. 624; *Matter of Mayor*, etc., 28 App. Div. 143; 157 N. Y. 409.)

*John R. Abney, amicus curiæ.* The language of the act of 1895 plainly applies to private streets as well as to those that are public. (*Matter of Mayor, etc., of N. Y.*, 128 App. Div. 143; *Matter of Mayor, etc.* [*Vanderbilt Ave.*], 95 App. Div. 533; 119 App. Div. 882; 189 N. Y. 551; *Barber* v. *Woolf*, 216 N. Y. 7.)

*Charles L. Craig, amicus curiæ.* It is not open to discussion that private or paper streets are within the scope of chapter 1006 of the Laws of 1895. (*Barber* v. *Woolf*, 216 N. Y. 7.)

CUDDEBACK, J. This appeal brings up for consideration the provisions of chapter 1006, Laws of 1895, known as the Street Closing Act.

The petitioner, Mary E. Farrelly, is the owner of certain lots fronting on Graham street in the borough of The Bronx, New York city, which street, she alleges,

was closed by the filing of a map under the Street Closing Act. She asks that the commissioners of estimate and appraisal appointed in this proceeding be directed, as provided in section 14 of the statute, to ascertain and determine the compensation which she should receive for the closing of the street.

The first question that arises is whether Graham street is a public highway, and that becomes in this court a question of law. The moving papers show that in April, 1893, the owner of a tract of land in which Graham street is situated filed a subdivision map in the office of the county register showing the tract laid out in streets with lots fronting thereon. Graham street is shown on the map as a *cul-de-sac* running northerly from Morris Park avenue to the north boundary of the subdivision, a distance of about 350 feet. In March, 1895, a petition was presented to the authorities of the town of Westchester, wherein the tract subdivided lay, asking to have the streets and avenues shown on the map accepted by the town, but so far as it appears, the petition was not granted.

On June 6, 1895, the town of Westchester, including Graham street, was annexed to the city of New York by chapter 934, Laws of 1895. On June 12, 1895, chapter 1006 of the Laws of that year, the Street Closing Act, became a law. Section 18 of the act provided that " No new street, avenue, lane, alley or road shall hereafter be laid out in such city except with the approbation and permission of the local authorities thereof," etc. No step was taken to have Graham street accepted as a public highway prior to the passage of the Street Closing Act, other than the futile application to authorities of the town of Westchester, and no formal acceptance of the street subsequently by the New York city authorities is shown. Section 18 of the act which forbids the laying out of streets without the approbation of the

1917.]                Opinion, per CUDDEBACK, J.                [222 N. Y.]

local authorities would show at least that the policy of the law is against indiscriminate street opening, and that equivocal acts on the part of the local authorities should not be taken to prove the acceptance of a proffered street.

The moving papers also show that after the annexation of the town of Westchester to the city of New York, Graham street was policed by the officers of the city. In 1905 the Bronx Gas and Electric Company, which had a general grant to use the streets for its corporate purposes, laid and afterwards maintained a gas main in Graham street and the property owners thereon, including the petitioner, made connections with the gas main. In the year 1906 a private sewer was laid in a part of the street. One of the petitioner's predecessors in title applied to the president of the borough of The Bronx for leave to construct the sewer and the application was granted on condition that the work should be done subject to the requirements of the department of sewers of the borough and under the supervision of an inspector of the department. The sewer was laid accordingly. In December, 1909, the commissioner of water supply, gas and electricity for the borough of The Bronx installed and maintained a street lamp in Graham street one hun- and twenty-five feet north of Morris Park avenue. In the year 1910 the president of the borough, acting through the commissioner of public works, laid an ash sidewalk four feet wide along both sides of Graham street from Morris Park avenue to a point two hundred and thirty feet north of the avenue, and subsequently in the same year the ash sidewalk was extended further north seventy-five feet. In the year 1910 the president of the borough caused a sign post to be placed at the northeast corner of Morris Park avenue and Graham street marked with the words " Morris Park Avenue " on one side and " Graham Street " on the other. In 1913 a patrol-

man of the police force of the city prevented an agent of the petitioner from driving over the sidewalk on Graham street because that was an unlawful use of that part of the public highway.

The petitioner further showed that during the past ten years people in vehicles and pedestrians have used Graham street as a thoroughfare to and from the houses fronting thereon, and to and from Mathews avenue, a nearby street. The roadway in Graham street has been for the same period in a fit condition for travel by horses, automobiles and other conveyances.

The petitioner urges that the acts enumerated, taken altogether, show that Graham street was accepted as a public highway.

In *Smith* v. *Smythe* (197 N. Y. 457, 461) this court held that mere travel by the public over a street laid out by a private person without action taken by the public authorities to maintain and repair it, is insufficient to show a public highway. In that case the owner of a tract of land had laid out the same in streets with building lots fronting thereon, which streets were narrower than the village could accept by dedication under the Village Law, but they were used for some years by the public. It was held as above indicated.

In *Speir* v. *Town of New Utrecht* (121 N. Y. 420, 429) the court said: " But the mere fact that a portion of the public travel over a road for twenty years cannot make it a highway; and the burden of making highways and sustaining bridges cannot be imposed upon the public in that way. There must be more. The user must be like that of highways generally. The road must not only be traveled upon, but it must be kept in repair or taken in charge and adopted by the public authorities."

The petitioner in this case, in addition to the proof of user, contends that the acceptance by the local

1917.]            Opinion, per CUDDEBACK, J.        [222 N. Y.]

authorities of the dedication of Graham street is further
shown by the fact that the Bronx Gas and Electric
Company having permission to place its mains and poles
in the highways, did lay a gas main in Graham street,
but the grant to this company of the right to use the
street was general and had no reference to particular
highways, and the laying of a gas main in Graham street
by the company has no particular significance, and is
in no way inconsistent with the idea that Graham street
was a private way.   The placing of a street lamp on
Graham street north of Morris Park avenue is also
regarded as important, but it is not shown that the lamp
was placed in the street by any official of the city who
had the authority to lay out public streets.   The same
may be said with regard to the construction of an ash
sidewalk in the street for some distance north of Morris
Park avenue.   In a great city like New York there is
an army of public officers and there must be a careful
and minute parceling out of authority among such
officers.   We should not hold that the act of an official
done in the line of his duty indicates that anything
outside of his line of duty has been done on behalf of
the city, and we should not regard it as equivalent to
the act of another official charged with entirely different
duties.

*People* v. *Underhill* (144 N. Y. 316) was the case
of a map filed showing a street laid out.   It appeared
that the people along the west end of the street had
asked the village to lay a sewer for their accommodation,
and also a sidewalk, and the authorities had complied
with such request.   Electric lights had been placed in
one part of the street and water pipes had been laid
some distance for the accommodation of the abutting
owners, and signs had been erected at the street corners.
*People* v. *Underhill* (*supra*) is a case which resembles
very greatly the present case, and the court held that

10

the facts shown in that case did not prove an acceptance of a street by the village authorities. They were simply acts which the village had performed for the accommodation of the people living on the street. The *Underhill* case is a leading authority on the subject of what amounts to the dedication and acceptance of land for a public highway.

The court at the Appellate Division held that Graham street was not a public street, but that it was a private way, and nothing more.

It was unquestionably a private way and there remains to be considered the second question presented, whether or not, regarding Graham street as a private way, the petitioner is entitled to compensation under the Street Closing Act because it was closed.

Section 2 of the statute (L. 1895, ch. 1006) I think answers that question in the negative. The section provides that the local authorities authorized to lay out, alter or improve any streets and to file a map showing such streets, shall on such map designate only the streets which they may determine to lay out, alter or improve as the permanent streets of the city and omit therefrom all former streets which they may determine to discontinue or close. The section then proceeds: " Upon and after the filing of such map, the streets, avenues and roads shown thereon shall be the only lawful streets, avenues and roads in that section of such city shown upon such map or plan, and all other former streets, avenues, roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established not shown thereon, and which are *not then actually open or in public use*, shall from and after the filing of such map or plan cease to be or remain, for any purpose whatever, a street, avenue, highway, road, alley, lane or *thoroughfare*," etc.

The section further provides: " But in all cases where

any such street, avenue, road, highway, lane, alley or thoroughfare is at the time of the filing of such permanent map or plan *actually open and in public use*, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, avenues or roads laid out by the local authorities upon the permanent map or plan of said city or district thereof in which such square or plot is situated, shall ever after any one of the streets, avenues or roads bounding such square or plot shall be opened, cease to be or remain for any purpose whatever a street, avenue, road, highway, lane, alley or *thoroughfare*," etc.

The first part of the section quoted refers to what may be called " paper " streets or such as are " not then actually open or in public use " and provides that such streets shall at once on the filing of a map cease to be streets for any purpose whatever. The second part of the section quoted refers to streets " actually open and in public use " at the time of the filing of the map, and provides that such streets shall cease to exist when a street bounding the block in which they are contained is actually opened.

It seems plain that the words " not then actually open " and not " in public use " in the first quotation are in the alternative and mean the same thing. That becomes clearer when we read in the second quotation the words " not then actually open and in public use." The streets referred to in both quotations are public streets.

It will also be observed that in the language of the act quoted the streets closed by the filing of the map are referred to generally as *thoroughfares*, a word which can apply only to public ways. A sign with the words' " No thoroughfare " on it is used to warn trespassers on private property.

So it would seem that section 2 answers in the negative the question whether or not the Street Closing Act applies to private ways.

The Appellate Division of the first department has had this question before it and has decided that the statute does not extend to private streets, and so far as the cases lay down that rule, they have not been criticised. (*Matter of Mayor, etc,, of N. Y.*, 41 App. Div. 586, 593; *Matter of Mayor, etc., of N. Y.* [*Walton Ave.*], 131 App. Div. 696, 720; *Matter of Olinger*, 160 App. Div. 96.) In 41 Appellate Division the court said: " This private street or way was not closed by the act, as it was never opened to the public, and in it the public had no interest to affect. The statute had no effect upon it."

It is said in behalf of the petitioner that section 18, previously mentioned, of the act of 1895, which forbids the opening of streets without the approval of the local authorities, includes private streets, and that the section embodies an ancient charter provision to the same effect. From that it is argued that the whole act applies to private streets. If there was a charter provision forbidding the opening of private streets without the approval of local authorities, it must be still in force, unaffected by the act of 1895, because that statute contains no repealing clause. It must not be overlooked that the Street Closing Act of 1895 purports to be a general statute, though now it is applicable only to New York city, because that is the only city in the state which has 1,250,000 inhabitants. Yet it may come in the future to apply to other cities of the state. Therefore, section 18, as well as the other sections of the act, should not be read solely with reference to the New York city charter. Section 18 should be held to refer to streets of the same character as those mentioned in section 2, which are closed by the filing of a map under section 2.

The main reliance of the petitioner in this proceeding is upon our decision in *Barber* v. *Woolf* (216 N. Y. 7). That case had no reference to private streets. The court held that as to public streets the filing of a map under the Street Closing Act extinguished private as well as public easements of the abutting owners. That is, it extinguished not only the right of the abutting owner in common with all other people to travel back and forth on the street, but also his private easements of light, air and access. The case decided nothing more. It is hardly necessary to point out that the decision in *Barber* v. *Woolf* in no way bears upon the proposition that the filing of the map under the statute operates to close private streets.

I recommend that the orders appealed from be reversed, with costs in all courts, and the question certified by the Appellate Division be answered in the negative.

HISCOCK, Ch. J., MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; CHASE and CARDOZO, JJ., dissent.

Orders reversed, etc.