In the Matter of the Application of the CITY OF NEW YORK, Relative to Opening White Plains Road (Although Not Yet Named by Proper Authority) from the Northern Boundary of the City of New York to Morris Park Avenue, etc.

In the Matter of the Application of Certain Property Owners for Damages Caused by the Abandonment, Discontinuance and Closing of Old White Plains Road and Elliott Avenue, etc.

THE CITY OF NEW YORK, Appellant, Respondent; OSCAR KECHELE, as Executor, etc., Respondent, Appellant; EMMA E. NESTELL, Appellant.

First Department, May 31, 1918.

Municipal corporations — street opening proceeding, city of New York — when Appellate Division will correct prior erroneous decision — private easements in private roads not extinguished — right to award for extinguishment of easement in public street — conveyance reserving to grantor fee of public street.

Where the Appellate Division held that private easements were extinguished by the closing and discontinuance of certain private streets by the filing of the map in the proceeding, but the Court of Appeals subsequently

held that the Street Closing Act does not apply to private ways or streets, the Appellate Division will correct the error without putting the parties to the expense of a fruitless rehearing, or to the expense of an unnecessary appeal.

*It seems,* that the fact that the commissioners in a street opening proceeding in the city of New York deducted the allowance from the principal of the award instead of from the interest, would not justify the court in sending the matter back to the commissioners in view of the attendant expense and the protracted character of the litigation.

As. the former decision of the Appellate Division that the commissioners erred in holding that private easements over an inside gore of land in front of certain parcels were not extinguished when the map was filed by the city in 1901 is not in conflict with the decision of the Court of Appeals in the same proceeding the decision of this court should stand.

But, unlike private easements in private streets, private easements in public streets are extinguished by the filing of the map by the city in the proceeding and the owners of such easements are entitled to compensation.

Deeds constituting the chain of title under which title to the bed of a discontinued post road is claimed examined, and *held,* that equity requires a determination that the former owner did not convey the same and that his grantees did not acquire the fee to any part thereof.

REARGUMENT of an appeal by the City of New York and others, from parts of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York confirming an award of commissioners in street closing proceedings.

*Charles L. Craig* and *James R. Deering,* for the appellant Emma E. Nestell.

*L. Howell LaMotte* of counsel [*Joel J. Squier* with him on the brief; *Lamar Hardy, Corporation Counsel*], for the appellant, respondent, City of New York.

*John R. Abney,* for the respondent, appellant, Oscar Kechele, as executor, etc.

SHEARN, J.:

This is a reargument of an appeal taken by Emma E. Nestell affecting damage parcel No. 3 and cross-appeals by the city and Oscar Kechele, as executor, as to parcels 18 and 19, from parts of an order confirming an award of commissioners in street closing proceedings, reported in 179 Appellate Division, 216. The reargument was ordered in consequence of the recent decision of the Court of Appeals in *Matter of*

*Wallace Avenue* (222 N. Y. 139) reversing the decision of this court in 179 Appellate Division, 172.

(Damage parcel No. 3.)   This property was described in claimant's deed as being bounded on three sides by Fulton street, Elliott avenue and the Williamsbridge road, as shown on a certain map of the estate of Peter Lorillard, deceased, filed in the office of the register of Westchester county. Williamsbridge road was what was later known as Old White Plains road.   Elliott avenue and Fulton street were never actually opened or used as streets or thoroughfares in the vicinity of this parcel.   On September 16, 1901, a map or plan of section 31 of The Bronx was duly adopted and filed, showing Old White Plains road, Elliott avenue and Fulton street as closed and discontinued.   In fixing the award for the easements cut off by the discontinuance of the Old White Plains road, the commissioners assumed that the claimant still had private easements of light, air and access in Elliott avenue and Fulton street.   It was held by this court that this was erroneous and that damages should have been awarded upon the basis that all easements were. extinguished by the filing of the map, including the private easements in the private and unopened streets or thoroughfares known as Elliott avenue and Fulton street as well as the easements in the Old White Plains road, following the decision rendered at the same time in *Matter of Wallace Avenue*.   In reversing the order in *Matter of Wallace Avenue* the Court of Appeals held that the Street Closing Act does not apply to private ways or streets.   It necessarily follows that the decision previously reached by this court as to this parcel was erroneous and it should be corrected without putting the parties to this protracted litigation to the expense of a fruitless rehearing or to the expense of an unnecessary appeal.   It is insisted by counsel for the claimant that the final map " seems to indicate on the face of the map that the City recognized Elliott Avenue and Fulton Street as previously existing public streets."   The evidence was clear that they were not public streets, and even if the map were susceptible of the contention made in behalf of the claimant it would be most unreasonable to make a finding based upon an erroneous description on a map contrary to the demonstrated actual fact.

(Parcels 18 and 19.) The city appealed from the order affecting these parcels on the ground that the commissioners erred in not setting off as against the interest on the award the value of the use of a certain gore forming a part of the bed of the discontinued street, but, as pointed out in the opinion on the former decision, the commissioners' report shows that in fixing the awards and the dates from which interest was allowed the commissioners considered all the evidence as to use and occupation and allowed for such use and occupation. The fact that the commissioners deducted the allowance from the principal of the award instead of from interest would not justify sending these parcels back to the commissioners, considering the attendant expense and the protracted character of this litigation, but, as was pointed out, as it is necessary to send these parcels back for another reason, any error in respect to this deduction can be readily corrected in the new award. Upon the former decision it was held by this court that the commissioners erred in holding that the private easements over the inside gore in front of these two parcels were not extinguished when the map was filed by the city in 1901. There is nothing in the decision of the Court of Appeals in *Matter of Wallace Avenue* in conflict with the decision heretofore reached as to these parcels and no new arguments have been advanced or new authorities called to the attention of the court, and the decision should, therefore, stand. The facts with-reference to the inside gore involved are that the Old White Plains road, on which these lots originally abutted, was regulated and graded by the village of Williamsbridge in 1892, in accordance with a map filed by that village in 1891, in pursuance of which the Old White Plains road was moved to the east, leaving a strip of land between the property and the line of the new street; and that by the filing of the map of the city of New York in 1901 the lines of Old White Plains road at this point were moved still further to the east, leaving a second and smaller gore between the line of White Plains road as regulated and graded by the village of Williamsbridge and the line as shown upon the city map of 1901. By the filing of the map of 1891 the inside gore was closed and discontinued as a public street. There remained, however, the private easements which the

claimant had over this inside gore up to their final destruction by the filing of the map under the act of 1895. (*Matter of Mayor* [*Vanderbilt Avenue*], 95 App. Div. 533, 540.) That the effect of filing the map under the act of 1895 was to extinguish these private easements in what had been an open and used public street and thoroughfare prior to the filing of the map of 1891, there can be no serious question, as it seems to us. So far as concerns private easements in public streets, the Court of Appeals did not in *Matter of Wallace Avenue* in any respect change its decision announced in *Barber* v. *Woolf* (216 N. Y. 7) in which it was held " that as to public streets the filing of a map under the Street Closing Act extinguished private as well as public easements of the abutting owners." When the city map of 1901 was filed the claimant had private easements in this inside gore which, while it did not then constitute a part of the bed of a public street, did constitute a part of the bed of a public street when the village of Williamsbridge filed the map of 1891. The public easements that were extinguished in 1891 were easements in a public street. The private easements that remained were easements in a public street. Although the strip or inside gore did not continue after the filing of the map of 1891 to be a public street, it seems reasonable to hold that the effect of the filing of the map by the city in 1901 under the act of 1895 extinguished claimant's private easements over the inside gore which had been originally a part of the bed of a public street and thoroughfare. This strip did not after the filing of the map of 1891 become a private road or way. It was simply a nondescript piece of land in front of claimant's premises shutting the claimant's property off from physical contact with the public street which was moved to the east. As one of the purposes of the act of 1895 was to extinguish all easements in public streets and as these private easements had their foundation in the fact that the gore was up to 1891 a part of the bed of a public street, it should be held that all easements over what was originally a public street should be deemed to have been definitely and finally extinguished by the filing of a map under the act of 1895. Such a holding accords with the decision in *Matter of Mayor* (*Vanderbilt Avenue*) (95 App. Div. 533;

119 id. 882; affd., 189 N. Y. 551). It is true that in the *Vanderbilt Avenue* case the precise point presented was whether under the provisions of chapter 1006 of the Laws of 1895 a two-year or six-year Statute of Limitations was applicable, but the decision necessarily involved the effect of the filing of the city map under the act of 1895, where the physical situation was strikingly similar to that here involved. A difference existed in the fact that in the *Vanderbilt Avenue* case both maps, the one creating the inside gore and leaving private easements therein unaffected and the map subsequently filed under the act of 1895 were filed by the city of New York, whereas the first map here was filed by the village of Williamsbridge and the second by the city, but the court held in that case that the filing of the map under the act of 1895 finally destroyed the private easements remaining after the filing of the first map, and this was necessarily involved in the decision, for section 5 of the act of 1895 provides that where a street is discontinued by virtue of a map filed under the provisions of the act, the claim for damages must be presented within six years after the filing of the map; but where such map was filed before the passage of the act of 1895 the claim must be presented within two years after the passage of the act.

A question has arisen, not previously considered, as to whether the fee in these gores, located in the westerly half of the Old Boston Post road, did not belong to the abutting owner, in which case on the closing of the road the property would still abut on the highway and thus disentitle the claimant to damages for any easements cut off by the relocation of the westerly line of the road. The question is a troublesome one and not free from doubt. The chain of title shown in the record dates from the will of John Williams dated July 25, 1787. The lands in question of John Williams comprised a tract of about ninety acres, part of which was located on the westerly side of the post road and part of which appears to have been located on the easterly side of the road. The parcel involved was a part of the property situated on the westerly side of the road. By deed dated March 11, 1803, Elijah Williams, a son of John Williams, conveyed to George Briggs the westerly tract of fifty-five acres by the following

description: " Beginning at a Butternut tree standing at the Corner of David Heustice land and from thence Westerly by and with said land as the fence now stands to Bronx River and from thence Southerly by and with said River unto a Stone Wall near the Bridge, thence as said stone wall runs to the corner by the mile stone on the Old Boston Road, and from thence northerly by said road to the first mentioned Bounds." It would thus appear that, under the rule stated in *Van Winkle* v. *Van Winkle* (184 N. Y. 193, 203) the fee of the soil of the highway to its center must be presumed to have passed to the grantee. On April 27, 1807, George Briggs conveyed the same property to Edward B. Briggs, Jr., by the following description: " Beginning at a butternut tree standing at the corner of the land of David Huestice, lately deceased, by the old Post Road and from thence westerly by said Huestice land to Bronks River, as the fence now stands and from thence southerly by said river unto a stone wall near the bridge and from thence easterly as the said stone wall stands by the aforesaid road to the lane by the mile stone and from thence northerly by the said road to the first mentioned — containing by estimation fifty-five acres and half, be the same more or less." Accordingly, Edward Briggs, Jr., thus acquired the fee to the center of the highway. By deed dated July 31, 1852, Edward B. Briggs, Jr., conveyed the same property to David S. Duncomb by the following description: " All that certain tract of land or farm situate lying and being in the town and County of Westchester, and State of New York, which is bounded and described as follows, Beginning at a Butternut tree, standing at the corner of land of Augustus Huestice, on the Boston Post Road, thence westerly by and with said land of said Huestice, as the fence now stands, to Bronx River and from thence southerly by and with said River, as it now runs unto a stone wall near Williams Bridge (so-called), thence easterly as the fence now stands by the road, leading from Williams Bridge (so-called), to the said Old Boston Post Road thence northerly by and with said Old Boston Post Road as the fence now stands to the point or place of beginning. Containing within said boundaries about 55 acres, be and the same more or less." The question is whether Briggs, Jr., intended to and

did exclude from the conveyance his fee in the Old Boston
Post road. It will be noted that there is an apparent intention
to convey the same property that Briggs, Jr., acquired from
George Briggs in 1807, described in all the deeds as being
about fifty-five acres. As against this, however, two con-
siderations present themselves. One is that, apparently
during the holding of Briggs, Jr., a fence had been erected
separating the property from the post road, and that, instead
of describing the property as running " northerly by the
road," as it was described in previous deeds, the easterly
boundary was now made to run northerly by and with the
road " as the fence now stands." This would seem to evince
a plain intention to reserve in the grantor title to the land
lying outside and easterly of the fence, and constituting a
part of the bed of the road. There may have been some
good reason for this, which is at least suggested by the fact
that the entire tract of ninety acres belonging to John
Williams originally lay, as it would appear from the descrip-
tion, on both sides of the post road. In the next place,
significance must be attached to the quasi-monument con-
stituting the commencement point of the description, which
was a butternut tree " on the Boston Post Road." (White's
Bank of Buffalo v. Nichols, 64 N. Y. 65, 71, 72; Kings
County Fire Ins. Co. v. Stevens, 87 id. 287, 290, 291; Black-
man v. Riley, 138 id. 318; Matter of City of New York,
209 id. 344, 347.) Under these circumstances, which have
led the title companies to refuse to guarantee any title in
the claimant to any part of the former bed of the post road,
equity requires that the doubt, if any, be resolved in favor
of claimant's contention that Edward B. Briggs, Jr., did not
convey, and that, therefore, Duncomb and subsequent grantees
in claimant's title did not acquire, the fee to any part of the
Old Boston Post road.

It follows that the order, so far as appealed from in respect
to parcel No. 3, should be affirmed, with ten dollars costs
and disbursements; in so far as appealed from by the owner of
parcels Nos. 18 and 19 and by the city of New York, the order
should be reversed, without costs, and the report returned
to the commissioners with directions to correct the award

of damages as to the outside gore by setting off against the interest on the award the value of the use of the discontinued street, with directions to assess the damages for the easements extinguished over the inside gore, and with directions to set off against the interest on such award the value of claimant's use of such gore.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

As to parcel No. 3, order affirmed, with ten dollars costs and disbursements. As to parcels Nos. 18 and 19, order reversed, without costs, and matter remitted to commissioners as stated in opinion. Order to be settled on notice.