---

### In re OPENING OF 182d ST.

(Supreme Court, Appellate Division, First Department.    June 9, 1899.)

MUNICIPAL CORPORATIONS—DISCONTINUANCE OF STREETS—COMPENSATION TO
   ABUTTING PROPERTY OWNERS.
      The town of West Farms by Laws 1873, c. 612, was annexed to the city of New York. Pursuant to Laws 1890, c. 545, the commissioner of street improvements completed the maps of all streets in such territory, which were approved and made conclusive as to their location. Many of the streets, as originally laid out by the owners of property in such town prior to its annexation, were omitted from the map, and thereby discontinued. Held, that under Laws 1895, c. 1006, providing for the discontinuance of streets in cities of more than 1,250,000 inhabitants, and prescribing the proceedings to determine the compensation to property owners, an owner whose property abuts on one of such discontinued streets in West Farms is not entitled to compensation because of its discontinuance, since the streets omitted were never condemned by the city as streets, nor accepted as dedications, and such act does not apply to private ways laid out by an individual on his own property.

Appeal from special term, New York county.

Petition by Murray C. Danenbaum for an order directing the commissioners of estimate and assessment appointed in a proceeding for the opening of 182d street, in New York City, to ascertain the compensation that should be. paid him for damages in consequence of the discontinuance of West and 1st streets.    From an order directing the determination of the compensation, the city of New York appeals. Reversed.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John P. Dunn, for appellant.
James A. Deering, for respondent.

INGRAHAM, J.    This proceeding was commenced to acquire the title to certain lands in the city of New York for a street laid out on the map of the said city as 182d street.    The petitioner presented to the court a petition alleging that he is the owner of a parcel of land included within the block which abuts upon 182d street; that at and prior to the time the streets and avenues now bounding the said block were laid out as and for the permanent streets and avenues of that portion of the city of New York, upon the final or permanent plan of that section of the said city, the premises of the petitioner fronted upon certain streets theretofore laid out, and designated as West street and 1st street, which streets, however, were not retained upon the said final and permanent plan of streets and avenues; that in

December, 1851, one Ward, being the owner of a tract of land, including the premises in question, caused a map of his property to be made and filed in the office of the register of Westchester county, entitled "Map of Wardsville, in the Town of West Farms, in the County of Westchester, N. Y.," and upon said map the said tract was divided into parcels fronting upon certain streets shown thereon, including the streets designated as West street and 1st street; that by chapter 612 of the Laws of 1873 the town of West Farms was annexed to the city of New York; that by chapter 545 of the Laws of 1890 it was provided that the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards of the city of New York was required to complete the surveys, maps, plans, and profiles of all the streets, roads, avenues, public squares, and places located and laid out, or hereafter to be located or laid out, in said territory, showing the location, width, grades, and class of the said streets, roads, avenues, public squares, and places, and on the completion thereof, and the approval of the board of street opening and improvement, the said maps, plans, and profiles "shall not be subject to any future change or modification, but shall be final and conclusive as to the location, width, grades and class of the streets, roads, avenues, public squares and places exhibited on such maps, plans and profiles"; that such maps were duly approved and adopted by the said board on January 30, 1895, and on the 2d of November, 1895, filed in the several offices named in the said acts; that subsequently, and by chapter 712 of the Laws of 1896, the said maps and plans made and filed as aforesaid by the commissioner of street improvement were ratified and approved; that many of the streets laid out originally by the owners of lands embraced within the said district, and many of the streets laid out by the trustees or public authorities, were not retained as part of the final map or plan of the city of New York for that section of the city, and were upon said map or plan omitted and closed and discontinued; that by said final map or plan West street and 1st street were discontinued and closed as streets or avenues by the omission of the same from the said map or plan; and that the title to the land in the said streets closed as aforesaid was not acquired by any of the towns or municipalities of Westchester county previous to annexation, nor by the city of New York since annexation as aforesaid.

By a copy of the map, dated December, 1851, annexed to the petition, it appears that West street and 1st street were thereon designated as streets, and that conveyances were made by. the owner of the property of lots bounded upon said West street and 1st street, and the petitioner became the owner of lots Nos. 30, 31, 32, 33, 34, and 35 on the said map. Three of those lots, namely, 30, 31, and 32, fronted on 1st street, as laid out on said map. Kingsbridge road, as laid out on said map, was continued on the final map of the Twenty-Third and Twenty-Fourth wards as 182d street. By the affidavits submitted on this petition it appeared that this map of Wardsville referred to in the petition, on which the streets designated as West street and 1st street appear, was a private property map; that the said streets shown thereon were never laid out or adopted as public streets in the city of New York, or even shown as public streets upon any official

58 N Y.S.—47

map of the said city; and that the only map on which said streets were shown is the map of Wardsville, referred to in the petition.    It affirmatively appears that the said streets known as West and 1st streets were never opened as public streets, nor were ever actually dedicated to the public as streets or avenues nor ever used as such, nor that the city of New York or the public ever acquired or accepted any interest or easement in the land laid out as a street.    Whatever rights, therefore, this petitioner acquired in these two streets, described upon this map or plan of Wardsville as West street and 1st street, were mere private easements belonging to his property, and to which the fee of the land constituting the bed of the street as laid out on said map became servient.    Neither the public nor the city of New York in this proceeding interfere in any way with any easement or right of the petitioner in 1st street or West street as laid down upon said map.    This petitioner now has the same right to use these two strips of land for the purpose of access to his premises, or for light and air, that he ever had.    Neither the city nor the public will acquire that easement by this proceeding, or by virtue of any statute or law to which our attention has been called; and the effect of this proceeding, if the order is affirmed, would be to require the public or the adjoining property to pay to the petitioner any damages which it can be ascertained that he sustained because of the failure of the city of New York, when it made its final plan for streets and avenues in this portion of the city, to adopt these private streets which private individuals have laid down upon the map of their own property as public streets and highways.    There is no law that can prevent the owner of land from creating upon it a private way to reach his property, or from granting lots of land bounded upon a private way which would give to the owner of such lands private easements in such way.    The state has the power to lay out public streets and highways.    It can accept from an owner of property a dedication thereof for use as a public street.    It has the power, by right of eminent domain, to acquire the title to land necessary for a public street or highway that is laid out as such.    The fee of this block of ground within the bounds of the streets laid out by the city of New York belongs to private individuals, who have a right to lay out a private way through the middle of the block, as they have done, by filing a map showing such a way, and selling lots of ground bounding upon it.    The legislature would have no more power to prevent the owners of this land from using this portion of their property for a private way than they would to prevent such an owner from building houses upon the property, or cultivating it, or applying it to any other legal use.

It is claimed by the petitioner, however, that in some way he has acquired a right, under chapter 1006 of the Laws of 1895, to compel the adjoining property to pay for the damage sustained by him in consequence of the refusal of the city to adopt these private streets as public streets.    That act is entitled "An act to provide for discontinuing and closing streets, avenues, roads, highways, alleys, lanes and thoroughfares in cities of more than one million two hundred and fifty thousand inhabitants."    Section 1 of the act provides that

in such cities the local authorities "may authorize in the manner hereinafter provided the discontinuance of such streets, avenues, roads, highways, alleys, lanes and thoroughfares therein as they may deem to be necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein." By section 2 of the act it is provided that the local authorities authorized by law "to lay out, open, extend, alter or improve streets, avenues and roads in any such city or district thereof and to make and file a map or plan showing the streets, avenues and roads so laid out, opened, altered, extended or improved, shall upon any map or plan so made and filed by them, designate only the streets, avenues and roads, which they may determine to so lay out, open, alter, extend or otherwise improve as the permanent streets, avenues and roads in and for such city, or for the particular district or section thereof shown upon such map or plan, omitting therefrom all such former streets, avenues, roads, highways, alleys, lanes and thoroughfares which they may determine to discontinue or close"; and, after filing such map, the streets, avenues, and roads shown thereon shall be the only lawful streets, avenues, and roads in that section of such city shown upon such map or plan, "and all other former streets, avenues, roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established, not shown thereon, and which are not then actually open or in public use, shall from and after the filing of such map or plan cease to be or remain, for any purpose whatever, a street, avenue, highway, road, alley, lane or thoroughfare, and the owner or owners of the fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used."

The first question presented is whether this act relates to or closes a mere private way laid out by an individual upon his own property for the benefit of himself and his grantees, and which has never been dedicated to the public, or become in any way a public highway. In the first section of the act the power given to the city therein described is the discontinuance of such streets, avenues, roads, alleys, lanes, highways, and thoroughfares therein as may be deemed necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein, or where other public necessity, in the judgment of such local authorities, requires the discontinuance thereof in whole or in part. This would seem to affect streets or avenues in which the public had acquired some interest, or in regard to which there had been imposed upon the city or the public some obligation. And this intent of the legislature is confirmed by the second section of the act, which provides the method by which a street, avenue, or road shall be discontinued. When the local authorities of such a city determine upon a plan, showing the streets, avenues, or roads, which is to constitute the permanent plan of the city, they shall upon such map or plan designate only the streets, avenues, or roads which they may determine to lay out, open, or improve as the permanent streets, avenues, or roads in and for such city

in the particular district or section, omitting therefrom all such former streets, avenues, lanes, alleys, and thoroughfares as they may determine to discontinue or close. It must be apparent that it was the intention here to discontinue only those streets, avenues, highways, or other ways in which the public had acquired some interest, or which the public had the right to open and maintain as streets, roads, or highways, or in relation to which there was imposed upon the public or the city a duty to open or maintain. The further provision that, "upon and after the filing of such map, all former streets, avenues, alleys, lanes and thoroughfares heretofore laid out, dedicated or established, not shown thereon and which are not then in actual, open or public use, shall from and after the filing of such map or plan cease to be or remain for any purpose whatever a street, avenue, highway, road, alley, lane or thoroughfare," could not have been intended to apply to a mere private way which the owner of a block of land had established for the purpose of access to his premises.

There was nothing in the decision of this court or of the court of appeals in Re Mayor, etc., of City of New York, 28 App. Div. 144, 52 N. Y. Supp. 593; Id., 157 N. Y. 412, 52 N. E. 1126,—that affects this question. There the application was for compensation for the discontinuance and closing of a part of Gerard avenue, between 168th and 169th streets, in the city of New York. Gerard avenue, a portion of which was closed by the filing of the map of the permanent plan for that portion of the city, was an open public highway, the fee of which had vested in the city of New York. By the appraisal of the interests of the abutting owners in that part of the avenue thus closed, the fee of the avenue, discharged of the private easements, would vest in the city of New York. It was said by this court that the act of 1895 provides a complete scheme for closing streets and avenues in the city of New York. In discussing the act the court say:

"On closing a street the public right in the street ceases, and the title to and the ownership of the fee of the land within the lines of the street, subject to any private easements therein, become vested in the grantor or his heirs if the street were dedicated, or in the city if the land were taken by condemnation proceedings. It is this situation which gives rise to the contention of the city, that, upon the closing of the street, that which was the roadway becomes private property, and that, when assessments are made upon neighboring property to pay for the extinguishment of private easements over the land thus closed and vested in individual ownership, such assessments are made for a private use, because the extinguishment of the easement is, it is assumed, for the exclusive benefit of the land in the street upon which those private easements rested as servitudes. * * * By the closing of the streets, under the decision in the two cases last cited, the city of New York did not ipso facto acquire an absolute fee, freed from all easements, in the land in Gerard avenue. In order to acquire such an absolute and untrammeled fee, it is necessary for the city to pay the value of the easements destroyed by the closing of the street. * * * If the object and intent of the statute are exclusively to thus vest the title, free from incumbrance, in individual ownership, then it is very plain that it would be incompetent to charge upon neighboring property the expense of getting in and extinguishing such easements, merely to enhance the value of the property thus held in individual ownership in the closed street; for that would be the taking of private property of some individuals for the private use of other individuals or of the city, and the law might justly be condemned as one imposing upon the owners of property the burden of acquiring the ease-

ments, where the whole purpose of the imposition of the burden is to benefit a private owner. * * * In the case before us the inquiry relates only to land of the city. As the assessment is only levied for carrying out a public purpose in connection with closing a street, such assessment upon property actually benefited by its imposition cannot be said to be unlawful."

This private street or way was not closed by the act, as it was never opened to the public, and in it the public had no interest to affect. The statute had no effect upon it, as neither the state, the public, nor the city had any right to appropriate it for public use, except by adopting it as a public street or highway, and proceeding to condemn it for such purpose. This the city elected not to do, and the damage, if any, sustained by the petitioner, is, as before stated, the result of the city authorities refusing to accept a dedication of the land for a street, or refusing to locate a street where the owner of this particular piece of land wanted one to be located; and it can hardly be said that the adjoining property could be assessed to compensate the petitioner for such real or supposed injury.

The order should therefore be reversed, and the motion denied, with $10 costs and disbursements. All concur.