SCHONLEBEN et ux. v. SWAIN.

SWAIN v. SCHONLEBEN et ux.

(Supreme Court, Appellate Division, First Department. February 11, 1909.)

1. BOUNDARIES (§ 20*)—LOT BOUNDED BY STREET.

 A deed describing a lot as bounded by the exterior line of a street does not convey any interest in the land of such street, though the street has been discontinued.

 [Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 127, 128; Dec. Dig. § 20.*]

2. BOUNDARIES.(§ 20*)—LAND CONVEYED—EASEMENT IN DISCONTINUED STREET.

 The discontinuance of a street under Laws 1895, c. 1006, p. 2037, extinguishes all easements in the land, both private and public, the abutting owner being compensated for the loss of his private easements, so that a subsequent conveyance of an abutting lot described as excluding the street does not convey any interest in the land of such former street.

 [Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 20.*]

3. BOUNDARIES (§ 20*)—LAND CONVEYED—DESCRIPTION—REFERENCE TO MAP.

 Where, after the discontinuance of a street, the land of the former street was divided by a fence from the abutting lot and used for a separate purpose, a subsequent deed of the abutting lot does not convey any interest in the land by merely referring to the original map by which the street was dedicated to the public, the reference being only for the purpose of describing the boundary between the lot and such former street.

 [Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 20.*]

Appeal from Special Term, New York County.

Two actions, one by Joseph Schonleben and Mary F. Schonleben, his wife, against Harold Swain, and the other by Harold Swain against Joseph Schonleben and Mary F. Schonleben, his wife. From a judgment in each case in favor of Harold Swain (109 N. Y. Supp. 223), the Schonlebens appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Harlan F. Stone, for appellants.

Benjamin N. Cardozo (Harold Swain, on the brief), for respondent.

SCOTT, J. Both of these cases have to do with the title to a strip of land in the bed of what was formerly Fifth or Sherman avenue, in the borough of the Bronx, in the city of New York, and which lies in front of and abuts upon a plot of land heretofore conveyed by the respondent, Swain, to the appellants, Joseph and Mary P. Schonleben. In one action the Schonlebens seek to enjoin Swain from interfering with their use of the disputed plot. The other action is brought by Swain to determine the respective rights of the parties to the plot in question.

Both actions arise upon the same facts, and involve the same questions of law. It appears that on February 14, 1854, there was filed in the office of the clerk of Westchester county (in which these premises lay) a map of the village of Mt. Eden, on which was laid out a street designated as "Fifth Avenue." The property between the streets and

avenues designated on that map was laid out into lots and numbered. The lots numbered 101, 102, and 103, all of which are now owned by the appellants, were shown as fronting on and bounded by Fifth avenue. The plot of land in dispute lies in front of lot No. 102, and comprises one-half of the land designated as "Fifth Avenue" opposite the lot. In 1878 an official map was filed by the park department, upon which Fifth avenue was shown, and designated "Sherman Avenue." It appears to have been graded, worked, and used as a public street until about the year 1895. By chapter 545, p. 965, of the Laws of 1890, provision was made for the election of a commissioner for the Twenty-Third and Twenty-Fourth wards of the city of New York (within which the property in question is located), with power within these wards to lay out and locate new streets, roads, avenues, and public squares and places, and, with the concurrence of the board of street opening and improvement, to change or close established streets, avenues, and public squares and places. By chapter 712, p. 859, of the Laws of 1896, the Legislature expressly confirmed the maps and plans drawn, approved, and filed as specified in the act of 1890 as the final map of the street system of the Twenty-Third and Twenty-Fourth wards. Among the maps thus drawn and confirmed was one filed on November 2, 1895, showing a square or plot of land inclosed and surrounded by four new streets, to wit, Walton avenue, Hawkstone street, Grand boulevard and concourse, and Rockwood street. That portion of Fifth avenue involved in these actions was inclosed within the square thus formed, and was indicated for discontinuance as a public street. By chapter 1006, p. 2037, of the Laws of 1895, further provisions were enacted regulating the closing of streets. In March, 1897, commissioners were duly appointed in proceedings to open the street specified on the map filed in November, 1895. In this proceeding was included the ascertainment of the damages to be awarded to the owners of property abutting upon Fifth avenue by reason of the discontinuance of said avenue as a public street pursuant to the provisions of chapter 1006, p. 2037, of the Laws of 1895. These commissioners, among other things, reported as follows:

"We further report that our awards herein are based upon the assumption that, upon the discontinuance and closing of the streets and avenues for whose discontinuance and closing we have awarded damages, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets and avenues laid out by the local authorities upon the permanent map or plan of the city were no longer streets or avenues for any purpose whatever, and that the owners in fee of the land or soil within the boundaries thereof became entitled thereupon to enclose, use and occupy the same to the exclusion of all others, and that all easements of light, air and access in the same were thereupon extinguished."

Under chapter 1006, p. 2037, of the Laws of 1895, the portion of Fifth or Sherman avenue within the block or square bounded by the new streets hereinbefore mentioned, ceased to exist as a public street when any one of the boundary streets became open, and thereupon the owners in fee of the land comprising such discontinued street became entitled to occupy it as if it had never existed as a public street. The four new streets bounding this block or square were opened at various dates between February 20, 1897, and June 1, 1904.

At the time of the discontinuance of Fifth avenue as a public street, lot No. 102, and one-half of the bed of Fifth avenue lying in front of it, belonged to Alexander D. Shaw. He conveyed the lot to the respondent, Swain, in July, 1904, by a deed in which he expressly included all his right, title, and interest in the bed of Fifth avenue, reserving to himself all claims for damages for the closing thereof. At about the same time Swain acquired the adjoining lot No. 103, onto which he moved a house, which he occupied. He fenced off that portion of the bed of Fifth avenue, or nearly all of it, which lay in front of lot No. 102, and used it as a vegetable garden, running the fence along the street line between lot No. 102, and the bed of Fifth avenue in front of it, for about two-thirds of the width of the lot. This condition of affairs continued until he sold lots Nos. 102 and 103 to the appellants by deed dated April 2, 1906. He continued to retain physical possession of the land in controversy, being the bed of what had been Fifth avenue lying in front of lot No. 102, which he continued to use as a vegetable garden, replacing the wire fence which ran along the street line by a wooden fence on the same line and extending the whole width of the lot. In May, 1907, these actions were commenced. The appellants contend: First. That by his deed to them Swain conveyed to them the fee of the bed of Fifth avenue lying in front of lot No. 102. Second. That, if he did not convey a fee, there remained appurtenant to lot No. 102 private easements of light, air, and access which had not been extinguished by the proceedings which resulted in the closing of Fifth avenue. Third. If neither of these contentions can be upheld, that Swain by the terms of his conveyance to the appellants recreated and re-established in favor of lot No. 102 private easements of light, air, and access over what had been the bed of Fifth avenue.

The first contention of the appellants, that Swain conveyed to them the fee in the bed of Fifth avenue, is clearly untenable. Swain had acquired such a fee by the express terms of the deed to him from Shaw, but when he came to convey to the appellants he was careful to use different language. He refers, it is true, to the Mt. Eden map on which Fifth avenue was shown as a street, and he refers to Fifth avenue in bounding the property conveyed; but he does so in a manner which serves to exclude any part of Fifth avenue from the operation of the conveyance. The boundary line runs, so far as concerns Fifth avenue:

"Thence easterly parallel with Walnut street 100 feet to the westerly side of Fifth avenue as laid down on said map, thence northerly along the westerly side of Fifth avenue 114.83 feet to the intersection of said westerly side of Fifth avenue with the northerly side of Hawkstone street," etc.

The rule in this state is that the bounding of a lot by the exterior line of an abutting street, as contradistinguished from bounding it by the street, excludes from the conveyance any part of the abutting street, unless there be circumstances (of which we find none in the present case) indicating a different intention. Jackson v. Hathaway, 15 Johns. 447, 8 Am. Dec. 263; English v. Brennan, 60 N. Y. 609; White's Bank of Buffalo v. Nichols, 64 N. Y. 65; Kings County Fire

Ins. Company v. Stevens, 87 N. Y. 287, 41 Am. Rep. 361; Augustine v. Britt, 15 Hun, 395. The question of the effect of a boundary by or along a lane or highway was recently discussed at length by the Court of Appeals in Van Winkle v. Van Winkle, 184 N. Y. 193, 203, 77 N. E. 33, 35, wherein it was said:

"The general rule both in England and in this state is that the fee of the soil of the highway is presumed to belong to the adjoining owners, and that a person holding land bounded on a highway between two estates is prima facie the owner of the center of such highway, subject to the easement of the public to the right of way; but that such presumption can be rebutted by an express provision in the deed to the effect that the fee to the highway was no intended to be conveyed, or by the use of such words as necessarily exclude the highway from the description of the premises conveyed, as where the description of the premises is bounded upon the exterior line of the highway, or commences at a point on one side thereof, and thence runs along the side to a point specified; but where the premises are bounded by, on, or along a highway, without restricting or controlling words, the instrument must be construed as conveying the grantor's title to the center of the highway."

The respondent was careful, in his deed to the appellants, to bring himself within the foregoing authorities by bounding the property conveyed by the westerly side of Fifth avenue, thus excluding from the operation of the conveyance any part of Fifth avenue.

The second contention of the plaintiffs that, notwithstanding the closing and discontinuance of Fifth avenue as a public highway, there still remained private easements therein appurtenant to the abutting property, is, as we think, equally untenable. The law of this state recognizes a distinction between public and private easements in a public highway, and it has been held that the discontinuance of a street by act of the municipal authorities, while it destroyed the public easements therein, left the private easements of the abutting owners unaffected and unimpaired. Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052. To remedy the confusion arising from the application of this rule, the Legislature passed chapter 1006, p. 2037, of the Laws of 1895, under which, as it has been held, when a street is discontinued under the provisions of that statute, all easements, both public and private, are destroyed, the abutting owner being compensated for the loss of his private easements. Matter of 168th Street, 28 App. Div. 143, 52 N. Y. Supp. 588, affirmed 157 N. Y. 409, 52 N. E. 126; Matter of the Mayor, Re Vanderbilt Ave., 95 App. Div. 533, 88 N. Y. Supp. 769; Matter of the Mayor, Re Vanderbilt Ave., 119 App. Div. 882, 104 N. Y. Supp. 1133, affirmed 189 N. Y. 551, 82 N. E. 1133. It is clearly shown by the report of the condemnation commissioners, quoted from in the statement of facts, that they made their awards upon the theory and assumption that all easements, private as well as public, were acquired and extinguished by the closing of Fifth avenue, and they actually made a substantial award to the appellants for their private easements appurtenant to lot No. 101, adjoining the premises in question. Whether or not Shaw, Swain's grantor, was awarded damages for the private easements appurtenant to lot No. 102, does not appear, and is not important. He had, and reserved by his deed, the right to such damages, and it is of no moment whether he pursued his claim or not, for the street had been actually discontinued long before lot No. 102 came into the ownership of the appellants. We are

therefore of the opinion that the private easement of air, light, and access over the bed of what had been Fifth avenue, formerly appurtenant to lot No. 102, had been extinguished before Swain conveyed that lot to the appellants, and consequently that no such private easements passed to appellants by his deed.

The third contention of the appellants is that by his conveyance Swain re-created and re-established easements of light, air, and access over the bed of what had been Fifth avenue in favor of lot No. 102 conveyed to appellants. This contention is based upon the fact that in the description of the property conveyed reference is made to the Mt. Eden map on which Fifth avenue is laid out and indicated as a public street, and that Fifth avenue as shown on that map constitutes one of the boundaries of the property conveyed. The appellants invoke in aid of this contention the general and well-established rule that when property is described as bounded upon a street an easement for street purposes is impliedly created by the grantor in favor of the grantee over the designated street, whether then actually existing as a street, or merely indicated as intended to be used as a street. While this rule is one which is generally applied, it is not inflexible or universal. The question whether or not a grantor conveying property bounded upon a street grants easements therein is one of intention, to be ascertained not from the description of the property alone, but also from the condition of affairs as they visibly exist when the conveyance is executed. The question in each case is whether the reference to the street or avenue was made only for the purposes of identification and location, or with the design to include street easements in the conveyance. Matter of Brook Ave., 40 App. Div. 522, 58 N. Y. Supp. 163, affirmed on opinion below 161 N. Y. 622, 55 N. E. 1093; Matter of 116th Street, 1 App. Div. 436, 37 N. Y. Supp. 508. In the present case, when the conveyance to appellants was made, Fifth avenue had been legally discontinued by the municipal authorities, and could not again be opened and used as a public street without most improbable action by such authorities. The bed of Fifth avenue in front of the premises conveyed had been inclosed, and openly and notoriously applied for several years to uses quite inconsistent with its use as a highway, and the appellants themselves had applied to a like inconsistent use a part of the bed of Fifth avenue lying in front of and adjoining the lot owned by them. Upon a very similar state of facts, when, after a statutory closing of a highway, an owner of premises abutting thereon conveyed them, bounding the land conveyed by the discontinued highway, the Court of Appeals said:

"Merely bounding premises by a public highway for purposes of description, and when it is referred to as any fixed mark or monument might be, is very different from selling by reference to a map or plan on which the grantor has laid out streets, and made a dedication and exposed himself to the equities of an estoppel; and then the road was in fact closed when the deed was made to Brennan, who knew or was bound to know that the public highway no longer existed, and must be presumed to have bought and fixed his price in view of that fact." King v. Mayor, etc., 102 N. Y. 171–175, 6 N. E. 395.

Under all the circumstances of this case we are of the opinion that the reference to Fifth avenue in the deed from Swain to the appellants was merely made as to a convenient monument, and that it was

not intended by the grantor, nor understood by the grantee, that easements for street purposes were included in and re-created by the conveyance.

It follows that the judgments appealed from were right and must be affirmed, with costs. All concur.