SIMEON M. BARBER, Respondent, *v.* JAMES A. WOOLF et al., Defendants.

GEORGE B. HEATH, Appellant.

New York city — street closing — when private as well as public easements extinguished by statutory proceeding.

It was the purpose of the statute (L. 1895, ch. 1006) relating to street closing proceedings in New York city, to permit the extinguishment of all easements, private as well as public, without reference to their origin and whether dependent upon contiguity, or upon grant express or implied. Hence, where a street is discontinued, in proceedings under that statute terminating in an award of damages, all easements, both public and private, are thereby extinguished. Authorities collated and reviewed. (*Matter of City of New York*, 160 App. Div. 80; *Matter of Olinger*, 160 App. Div. 96, criticised; *Johnson & Co.* v. *Cox*, 196 N. Y. 110, explained.) *Barber* v. *Woolf*, 167 App. Div. 627, affirmed.

(Argued May 31, 1915; decided September 28, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 7, 1915, which reversed an order of Special Term granting a motion by a purchaser at a foreclosure sale for relief from his purchase and denied said motion.

The facts, so far as material, are stated in the opinion.

*George E. Coney* and *George B. Heath* for appellant. The private easements in Seventh avenue, or Rockwood street, appurtenant to lot 51, created by grant from the proprietors of the Mt. Eden tract and by mesne conveyances to Minzesheimer, the present owner of that lot, survived the closing of Rockwood street as a public highway and still exist as incumbrances on lot 24, as part of the bed of the street, depriving lot 24 of all substantial value and rendering the title unmarketable. (*Matter of Grand Boulevard,* 160 App. Div. 80; *Matter of Olinger,* 160 App. Div. 96; *Holloway* v. *Southmayd,* 139 N. Y. 390; *Johnson* v. *Cox,* 196 N. Y. 110; *Swain* v. *Schonleben,* 130 App. Div. 521; 198 N. Y. 622.) The acceptance of an award of damages for closing Seventh avenue does not estop the owner of lot 51 from asserting his right of way over the closed street. (*Holloway* v. *Southmayd,* 139 N. Y. 390; *Matter of City of New York,* 153 App. Div. 164.)

*Harold Swain* and *Benjamin G. Bain* for respondent. The award to Minzesheimer in the Walton avenue proceeding was properly made for the extinguishment of all easements, including those dependent upon grant, express or implied. (*Matter of Mayor, etc. [East 168th Street],* 28 App. Div. 143; 157 N. Y. 409; *Matter of Mayor, etc. [Vanderbilt Avenue West],* 95 App. Div. 533; 119 App. Div. 882; 189 N. Y. 551; *Matter of Mayor, etc. [Walton Avenue],* 131 App. Div. 696; 197 N. Y. 518; *Swain* v. *Schonleben,* 130 App. Div. 521; 198 N. Y. 622.)

WILLARD BARTLETT, Ch. J.　This is an action to foreclose a tax lien on land formerly included wholly

within the bounds of a street which has been closed, abandoned and discontinued as a public highway, by proceedings under chapter 1006 of the Laws of 1895. The appellant was a purchaser at the foreclosure sale under the judgment. He subsequently instituted this proceeding to be relieved from his purchase on the ground that the lot sold to him proves to be incumbered with easements of light, air and access appurtenant to an adjoining parcel belonging to another person.

The property sold under the judgment of foreclosure is described as block 2846, lot 24, on the tax map of the borough of The Bronx, and it formerly lay entirely within the easterly half of the street known as Seventh avenue on maps of this portion of the borough of The Bronx. In the year 1854 one Thomas O. Woolf and others made and filed a map of property in this vicinity which they used as the basis for the conveyance of the lots shown thereon. This is known as the map of Mount Eden; and upon it appeared Seventh avenue as originally planned and lot 51 bordering Seventh avenue on the east immediately adjoining lot 24 in block 2846 as the latter appears on the tax map of the borough of The Bronx. In 1855 the makers of the map of Mount Eden conveyed lot 51 to Isaac Minzesheimer, from whom the defendant Charles Minzesheimer, through mesne conveyances, acquired title to the same in 1880.

Although Seventh avenue (sometimes otherwise known as Rockwood street) was never legally or actually opened as a public street, it is undisputed that under the conveyances referring to the map of Mount Eden the grantee of lot 51 had, and the defendant Charles Minzesheimer has, as his successor in title, acquired private easements of light, air and access over that portion of Seventh avenue lying in front of said lot; that is to say, over the property described as lot 24 in block 2846 on the tax map of the borough of The Bronx.

In answer to the objection on the part of the appellant

that the existence of this easement constituted an incumbrance which entitled him to be relieved from his purchase, the respondent relied upon a legal proceeding which he claims has had the effect of extinguishing the easement.

When the final maps of the twenty-third and twenty-fourth wards of the city of New York were duly filed as required by law in 1895, Seventh avenue or Rockwood street was shown thereon to have been discontinued and a new street named Walton avenue was laid out on the Bronx plan. According to these official maps lot 51 belonging to the defendant Charles Minzesheimer was left in the middle of the block with no means of access or egress except over Seventh avenue, which was to be closed. Shortly thereafter the city of New York instituted a proceeding to open Walton avenue and in connection therewith to close a number of streets and avenues shown on the final map of the permanent plan as having been discontinued. So far as this proceeding contemplated the closing of streets it was conducted under the authority of chapter 1006 of the Laws of 1895 which went into effect on the 12th day of June in that year. The defendant Charles Minzesheimer, as the owner of lot 51 on the Mount Eden map, petitioned the court in that proceeding for an award of damages which he would suffer, alleging that his easements "in and to said Seventh Avenue or Rockwood Street as appurtenant to said lot have been extinguished and destroyed and the owner of the soil of said discontinued streets and avenues is now vested with the absolute fee title thereto." The commissioners awarded Mr. Minzesheimer $1,200 damages, which amount was paid to and accepted by him. The learned Appellate Division in its opinion in the present case says: "There can be no doubt that the damages referred to were claimed by Minzesheimer, and awarded to him by the commissioners upon the theory, very generally accepted when the report was made, that the effect of filing the map of 1895, was to extinguish all easements,

private as well as public over the streets and avenues
shown on said map as discontinued, whether such streets
and avenues had been actually opened or not." Accord-
ingly that court has held that under such circumstances
the defendant Charles Minzesheimer and his successors in
interest are forever estopped from claiming that any
easements, public or private, still remain as appurtenant
to his lot 51 over the plot of land which the appellant has
purchased.

While the action of the Appellate Division in refusing
to relieve the purchaser from his bid may be sustained on
the ground of estoppel as thus stated, we think that
learned court has unduly limited the effect of street
closing proceedings under chapter 1006 of the Laws of
1895 upon the easements appurtenant to lands affected by
the discontinuance of a street. It is a misapprehension
of the decisions of this court to say that it must be
accepted as the present law as declared by the Court
of Appeals " that street closing proceedings under the
act of 1895 are not intended and do not operate to extin-
guish purely private easements resting upon actual
or presumed grants." On the contrary, we think it can
be shown that our decisions are uniformly the other
way.

The so-called Street Closing Act of 1895 was first fully
considered and discussed in *Matter of Mayor, etc., of N. Y.*
(28 App. Div. 143, 154) in an elaborate and able opinion by
Mr. Justice PATTERSON which subsequently received the
unanimous and unqualified approval of this court. (157
N. Y. 409.) In that opinion it was expressly declared that
the act of 1895 had for its object, among other things,
the extinguishing of private easements. It was further
demonstrated that the closing of a street was a public
purpose, and " in order to make that an actual closing it
is necessary that the easements of the abutting owners
should be extinguished, for otherwise the street could not
be effectually closed." The various constitutional objec-

tions which had been made to the statute were carefully considered and held to be untenable; and when the case reached this court we said: "It is doubtless true that some of the provisions of the act pertaining to the acquiring of the fee and easements in discontinued streets, if they stood alone, might be construed as authorizing the taking of property for a private use, but when these provisions are considered in connection with the other provisions of the Act, we find that they all aim at one object, and that is the laying out and opening of the streets and avenues of a city according to a plan adopted. Confessedly, this is for a public purpose, and we think that the acquiring of the fee and easements in the old roadways which are discontinued should be treated as incident and necessary to carry out the public improvement authorized by the provisions of the act." (157 N. Y. p. 412.)

In *Matter of Mayor, etc., of N. Y. (Vanderbilt Ave.)* (95 App. Div. 533; 119 App. Div. 882; affd., 189 N. Y. 551) it was again held that under the provisions of chapter 1006 of the Laws of 1895 for the closing of old streets both public rights and the private easements of abutting owners might be extinguished. In *Swain* v. *Schonleben* (130 App. Div. 521, 526; affd., 198 N. Y. 622) Mr. Justice SCOTT writing for the Appellate Division said: "The law of this state recognizes a distinction between public and private easements in a public highway, and it has been held that the discontinuance of a street by act of the municipal authorities, while it destroyed the public easements therein, left the private easements of the abutting owners unaffected and unimpaired. (*Holloway* v. *Southmayd*, 139 N. Y. 390.) To remedy the confusion arising from the application of this rule the legislature passed chapter 1006 of the Laws of 1895 under which, as it has been held, when a street is discontinued under the provisions of that statute all easements, both public and private, are destroyed, the abutting owner being compensated for the loss of his private easements." Finally in *Matter of Mayor, etc., of N. Y.*

(*Walton Ave.*) (131 App. Div. 696, 702; affd., 197 N. Y. 518) it was said: "It must now be regarded as the settled construction of this statute that the legislature intended to provide, not only for the destruction of public easements, but of private easements in the discontinued streets as well."

The language of these several decisions would seem to have been plain enough to leave no room for doubt as to the meaning and scope of the act of 1895; but a novel distinction was suggested and applied by the Appellate Division of the first department in two cases decided in January, 1914, namely: *Matter of City of New York* (*Grand Boulevard*) (160 App. Div. 80, 83) and *Matter of Olinger* (160 App. Div. 96). In the first of these cases the Appellate Division, while conceding that private easements resulting from the mere circumstance of contiguity might be extinguished by proceedings under the Street Closing Act of 1895, went on to say: "There remains, however, another class of private easements, created by grant implied or express, which have no necessary relation to the street as a public highway, with the extinguishment or continuance of which the public commonly had no interest, which existed in many cases before the public highway was established as such and which survive its discontinuance as a public highway. These are not destroyed or extinguished by the closing of a street under the Street Closing Act of 1895." While the order in this case was affirmed by the Court of Appeals the affirmance was placed upon grounds which did not import a concurrence in the statement just quoted. Indeed, Judge CARDOZO, who wrote the opinion here, said: "I assume for the purpose of this case that the statute was intended to extinguish all easements, private as well as public, and this without reference to their origin, whether dependent upon mere accidents of contiguity or upon grant express or implied. I think we should leave those questions open to the extent that our answer to

them is not controlled by earlier decisions." (212 N. Y. p. 543.)

In the *Olinger Case (supra)* the Appellate Division reiterated its opinion that private easements arising from express or implied grants could not be extinguished under the act of 1895, and cited *Johnson & Co.* v. *Cox* (196 N. Y. 110, 121) as authority for that proposition. This view, however, was based upon a complete misapprehension of the *Johnson* case. That case was a controversy between abutting landowners having private easements in the old Kingsbridge road. Appropriate legal proceedings for the opening of a street contiguous to and substantially parallel with the old Kingsbridge road, to be known as the Spuyten Duyvil road, had been instituted and carried far enough to vest title in the city of New York, but at the time of the trial of the action said proceedings were still pending and no physical opening of the Sputen Duyvil road had taken place, nor had it ever been traveled. The case came up on the judgment roll only, and this court held, *first,* that the public use of the old Kingsbridge road could not be interfered with until the Spuyten Duyvil road should be actually opened for travel, and, *second,* that the plaintiff could not be precluded from exercising its private easement of right of way over the old Kingsbridge road which it had acquired by grant inasmuch as such private easements had not yet been condemned and the owners thereof properly compensated for the taking of the same by an award of damages. The conclusion of law in the decision of the trial court to the effect that the private easement created by grant could not be destroyed by the closing of a street under the provisions of chapter 1006 of the Laws of 1895, meant merely that the closing in and of itself did not suffice to destroy the easement; but Judge EDWARD T. BARTLETT repeatedly uses language in the opinion which clearly imports that private easements resting in grant can be extinguished by means of appropriate proceedings followed by an

award of damages. The contention of the defendant in this court was that the only right which the plaintiff had in the old Kingsbridge road was a public easement which merged and extinguished any private easement it may have possessed. We held, on the contrary, that there were private easements resting in grant which had not been affected by merely laying out the new street and discontinuing the old one and the vesting of the title in the city. Something more was necessary to extinguish the private easements, namely, a condemnation, an award and the payment of the award. It was because these elements were lacking that the *Johnson* case was decided as it was. The plainest implication that such easement could have been extinguished by condemnation if the proper steps had been taken to that end is found in the following passage from the opinion of Judge EDWARD T. BARTLETT:

"The extinguishment of public easements and easements of light, air and access, which is effected by the legal opening of a highway, or the construction of an elevated or surface railroad, is due to the public necessities of the situation and property owners are duly compensated therefor. This ordinary adjustment of the rights between the public and the citizen has no application to the situation now presented. It would seem to go without saying that an easement by grant is not to be distinguished from a deed conveying the fee, and can only be acquired by condemnation or conveyance."

That this must be the correct view of the meaning and effect of the opinion in the *Johnson* case is apparent from our subsequent decision in the *Walton Ave. Case (supra)* where we upheld the action of commissioners of estimate and assessment awarding damages for the extinguishment of private easements in certain streets which were closed in connection with the opening of Walton avenue. There the corporation counsel contended that the awards were erroneous because they included damages for tak-

ing private easements created by private grant, and hence by affirming the order under review we necessarily held that this objection was untenable.

We have discussed this matter at some length because it is extremely important to property owners, to the municipal authorities and to the legal profession that the scope and effect of proceedings under chapter 1006 of the Laws of 1895 for the extinguishment of easements should no longer remain uncertain and open to question. We think it was the purpose of the statute to permit the extinguishment of all easements, private as well as public, and this without reference to their origin and whether they depend upon mere contiguity or upon grant express or implied. There is no logical basis for making any distinction between one class of private easements and another. The closing of streets in order to permit the adoption of a uniform plan of municipal improvement being a public purpose and an actual closing being necessary to carry out that purpose it is just as essential that private easements resting in grant shall be extinguished as any others. Unless they could be acquired upon proper compensation being made therefor the statute would fail of its purpose. We are, therefore, of the opinion that the private easements affecting the property sold in this case were lawfully extinguished under the provisions of chapter 1006 of the Laws of 1895 independently of any question of estoppel.

For these reasons the order appealed from should be affirmed, with costs.

HISCOCK, CHASE, CUDDEBACK, HOGAN and SEABURY, JJ., concur.

Order affirmed.