In the Matter of Acquiring Title to WALLACE AVENUE, from Baker Avenue to Bear Swamp Road; BARNES AVENUE, from Baker Avenue to Bear Swamp Road; MATTHEWS AVENUE, from Baker Avenue, · etc., to Bear Swamp Road, and MULLINER AVENUE, from Morris Park Avenue to Bear Swamp Road, etc.

THE CITY OF NEW YORK, Appellant; MARY E. FARRELLY, Respondent.

First Department, July 13, 1917.

Municipal corporations — street closing proceeding, city of New York — right of owner deprived of easements to compensation — statute construed — extinguishment of private easement — origin of easement immaterial.

Neither the laying of gas pipes by a public service corporation in a street physically opened and in use in the city of New York, nor the building of a private sewer beneath said street with the consent of the city authorities, constituted an acceptance by the city of the dedication of the street by a prior owner who laid out said street upon a map and sold abutting lands with reference thereto.

But although said street was not accepted by the city, when it was subsequently closed under the provisions of chapter 1006 of the Laws of 1895 an abutting landowner who has been° actually deprived of the use of said street so that her lands are isolated by the street closing, is entitled to have the commissioners of estimate and assessment ascertain the amount of compensation to which she is entitled by reason of the extinguishment of her easements by the city.

The statute aforesaid entitles the owner to compensation on the extinguishment of such easement whether the easement be private or public and irrespective of its origin.

SCOTT and LAUGHLIN, JJ., dissented, with opinion.

APPEAL by The City of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of March, 1916, referring a claim for damages to the commissioners of estimate and assessment in this proceeding.

*Joel J. Squier*, for the appellant.

*James F. Donnelly*, for the respondent.

SHEARN, J.:

The parcels of land owned by the petitioner originally formed part of a plot owned by the Downing estate in what was the town of Westchester prior to annexation by the city of New York. In April, 1893, this plot was laid out upon a map known as Map No. 1076, filed in the register's office. On this map was shown a street called Graham street, 50 feet wide, commencing at Morris Park avenue and running northerly about 340 feet. Graham street was physically laid out in accordance with the map, and the petitioner's lots, together with all lots facing upon Graham street, were sold with reference to the map, and are contiguous to and front on Graham street. This thoroughfare was subsequently used by vehicles and pedestrians as an approach to the lots fronting thereon and the roadbed was in a fit condition for travel by horses and automobiles for many years and down to the closing of the street by the city. In 1905 the Bronx Gas and Electric Company, a public service corporation having a franchise to install gas mains in the various streets of the town of Westchester, installed a gas main through Graham street, which main has remained in the bed of the street ever since for the purpose of supplying the owners of abutting property with gas. In 1906 the petitioner's predecessor in title procured a private sewer to be laid in the street, which was done after the issuance of a permit by the bureau of sewers of the borough of The Bronx. On October 17, 1907, the city of New York filed a map showing this territory as laid out in streets and avenues by the constituted authorities. On this map Graham street was indicated by broken lines, showing that it was not intended to be one of the public streets according to the plan then laid out. Under the provisions of chapter 1006 of the Laws of 1895, upon the filing of this city map, Graham street ceased " to be or remain, for any purpose whatever, a street, avenue, highway, road, alley, lane or thoroughfare." (See § 2.) Consequently the petitioner's lot was marooned and cut off from street access to Morris Park avenue, which was continued as a public street upon the city's plan. Thereupon the motion was made, eventuating in the order appealed from, for the commissioners of estimate and assessment to take proof and report the compensation which should justly

be made to the petitioner for the loss and damage in and to her lands and easements by reason of the closing and discontinuance of Graham street.

The first question to determine is whether Graham street was a public street, in the sense that it had not only been dedicated and used as such but had been accepted by the city, for in such case the petitioner would clearly be entitled to compensation for the deprivation of her public easement therein and her private easement growing out of the contiguity of her lot and the street. Neither the laying of gas pipes by the public service corporation nor the building of a private sewer with the consent of the city authorities constituted an acceptance of the dedication of this street and it was not a public street in such a sense. This presents the second and real question in the case, namely, whether the closing of this thoroughfare deprived the petitioner of the easements in what was, prior to the filing of the city's plan, Graham street, which easements were created by private grant, originating in the sale of lots according to a plan showing a street which thereafter came into physical existence but which was never accepted as a street by the city. Whatever doubt may have heretofore existed about the right to recover compensation in these proceedings for all easements extinguished by the city, whether public or private, and, if private, whether growing out of contiguity or originating in private grant, has been definitely determined, as it seems to me, by the decision of the Court of Appeals in *Barber* v. *Woolf* (216 N. Y. 7). It would serve no purpose to review this long-standing controversy, for that was done clearly and comprehensively by Chief Judge BARTLETT in the *Barber* case, and in his opinion the cases of *Matter of City of New York (Grand Boulevard)* (160 App. Div. 80, 83) and *Matter of Olinger* (Id. 96) were criticized and their reasoning on this point involved rejected, in spite of which they continue to be cited as authorities for the proposition that in such proceedings as these a property owner can claim no damages for the extinguishment of easements originating in private grant unless the street closed was on a public street in the sense that it had either been opened as such or the city had accepted a dedication of it. The learned chief judge

stated in the *Barber* case that the opinion had discussed the matter at some length " because it is extremely important to property owners, to the municipal authorities and to the legal profession that the scope and effect of proceedings under chapter 1006 of the Laws of 1895 for the extinguishment of easements should no longer remain uncertain and open to question." He then went on to say: " We think it was the purpose of the statute to permit the extinguishment of all easements, private as well as public, and this without reference to their origin and whether they depend upon mere contiguity or upon grant express or implied. There is no logical basis for making any distinction between one class of private easements and another. The closing of streets in order to permit the adoption of a uniform plan of municipal improvement being a public purpose and an actual closing being necessary to carry out that purpose it is just as essential that private easements resting in grant shall be extinguished as any others." It seems incredible that in an opinion intended to clarify and definitely settle this question of extinguishment of easements, the Court of Appeals intended to leave open any such question as is here presented.

In *Matter of White Plains Road* (N. Y. L. J., July 23, 1914) the corporation counsel claimed on the authority of the *Grand Boulevard* and *Olinger* cases that unless the fee of a closed street has vested in the city of New York the presumption is that the owners of the abutting property have easements by grant and that such easements are not extinguished by the closing of a street, each abutting owner still having the right for his own purposes to uninterrupted passage over the same and to unobstructed light and air from the particular strip. Mr. Justice PAGE, in a very careful opinion, concluded that any such interpretation of the law did violence to the purposes and intent of the statute. Justice PAGE said, after quoting the statute: " Language more comprehensive could hardly be used to declare the intent that there should be a uniform plan for streets, avenues and roads within the city or the district thereof for which the map or plan was filed, and that all streets, roads, highways, lanes, alleys or thoroughfares theretofore in any manner created, existing or contemplated which were not retained on the permanent plan, together with

all rights and easements therein, whatever the same, or public or private, should cease and determine.  The right is given to the owner of the fee included within the boundaries of ' all such streets, avenues, roads, highways, alleys or thoroughfares to inclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used,' and this without regard to the fact whether the same had been theretofore open and in public use or not.  The right to inclose shows there was no intention of allowing private easements to exist therein after the permanent plan was established and streets opened in the same block with the former street.  The declared purpose of uniformity in plan would be defeated if the old streets were to be still kept open as private ways. A block ' criss-crossed ' with private easements of access, light and air would be undesirable for building, and thus a large amount of property would of necessity remain unimproved and the taxable value reduced.  It seems to me, therefore, that the city is interested in the extinguishment of these private easements."  Subsequently came the decision in *Barber* v. *Woolf* (*supra*) and in it the fundamental reason assigned was identical with that relied upon by Mr. Justice PAGE, namely, the interest of the city in the adoption of a uniform plan of municipal improvement, which the closing of all streets, lanes and thoroughfares other than those specifically continued at the instance of the city makes possible.

The important consideration, as it seems to me, is not the character of a street, road or thoroughfare, but whether closing it impairs or extinguishes any private easements therein.  The facts that the easements may be in a public street, or in a street never opened or both dedicated and accepted, but used as a street, or in a lane or alley or other thoroughfare, is only important as affecting the amount of damages recoverable.  The right to recover depends upon whether any easement has been extinguished, either public or private, and irrespective of its origin.  Whether Graham street was a public street or (in the sense that it had never been opened, or both dedicated and accepted) a private street, or was a lane or alley or any other kind of thoroughfare, it is undisputed that it was *closed* when the city's map was filed.  How such closing affected the petitioner's private

easement, originating in grant, to have free, open and uninterrupted right of passage along the thoroughfare from petitioner's house to Morris Park avenue, is apparent when one reads section 18 of chapter 1006 of the Laws of 1895. This provides that as to any street, avenue, lane, alley, highway or road which has been discontinued and closed by the local authorities, if not inclosed or occupied by the owner, " it shall be lawful for the said local authorities to cause the same to be inclosed or fenced in." In other words, the city, in order to carry out its plan of uniformity in street development, had the right, on filing this map showing Graham street discontinued, to fence or barricade off from Morris Park avenue this road that had for years afforded the only access to the lots along it. This right of access originated in private grant. It cannot be maintained that the city's right to barricade the road and prevent travel over it is not inconsistent with and ·does not impair the easement of access and passage created by a private grant. Right of access no longer exists, and, whatever the character of the thoroughfare, abutting property owners are entitled to compensation commensurate with their property rights invaded and extinguished.

For these reasons the order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., and DAVIS, J., concurred; SCOTT and LAUGHLIN, JJ., dissented.

SCOTT, J. (dissenting):

The city of New York appeals from an order referring to the commissioners of estimate and assessment appointed in this proceeding, the claim of Mary E. Farrelly for damages resulting from the closing of Graham street in front of and adjoining property owned by said petitioner.

The only question in the case is whether or not Graham street is a public highway. If it is the petitioner is entitled to damages. for the destruction of both her public and private easements resulting from the official closing of the street. (*Barber* v. *Woolf*, 216 N. Y. 7.)

If, however, Graham street is not and never was a public street, as claimed by appellant, but merely a private street

or way laid out and used by the owners of the adjacent property for their own benefit, it is not within the purview of the Street Closing Act; is not in anywise affected by the present proceeding and the respondent can claim no damages because it is not proposed to continue it as a public street. (*Matter of Mayor*, 41 App. Div. 586, 593; *Matter of Mayor, etc.* [*Walton Avenue*], 131 id. 696, 720; *Matter of Olinger*, 160 id. 96.) And the question whether or not it is a street for the closing of which damages may be awarded is one which must be determined by the court when an application is made for a reference to the commissioners. (*Matter of City of New York* [*Juniper Avenue*], 162 App. Div. 291; appeal dismissed, 213 N. Y. 654.)

Graham street, so called, is in that portion of the city of New York which formerly comprised the town of Westchester. Its first appearance on any map was on a private map of the Downing estate filed in the Westchester county register's office on June 9, 1893, before the annexation of the town of Westchester to the city of New York. On this map it is shown as a *cul de sac* fifty feet in width commencing at Morris Park avenue and running northerly for a distance of about 340 feet. The filing of this map, while it doubtless indicated a willingness or offer on the part of the owners of the property to dedicate the strip of land as a public street, did not serve to make it a public street. To effect that purpose an acceptance by the town of Westchester, or later by the city of New York, was necessary.

No formal acceptance by either was shown whether by way of a resolution of the proper municipal authorities, or by the filing of an official map showing said Graham street as one of the public streets of the city.

The first official map showing the territory as laid out into streets by the constituted authorities was filed in 1907. On this map the so-called Graham street was indicated by broken lines showing that it was not intended to be one of the public streets according to the plan then laid out. This certainly was not equivalent to an acceptance of the street as a public street, or even as an acknowledgment that it ever had been a public street, but was rather a repudiation of its attempted dedication by its owners.

The next official map which was filed covering the same territory was so filed in 1911. On this map the streets to be opened were shown in exactly the same location as on the map of 1907, but the so-called Graham street was not indicated in any way.

It certainly cannot be said, therefore, that Graham street was ever formally accepted and adopted as a public street by any official map filed in pursuance of law by the public authorities.

The petitioner claims, however, that there was a practical acceptance of the street as a public thoroughfare evidenced by the acts of certain public officials with reference thereto. It is said that the street was for many years patrolled by the police, but this of course does not indicate an acceptance by the city, for it is the duty of the police to afford protection to private as well as public property. In 1905 the town of Westchester granted an electric lighting company a permit to lay mains in various streets of said town in pursuance of which the company laid mains in said Graham street, and in 1906 the owners of the abutting property laid a private sewer in the street under the authority and supervision of the president of the borough of The Bronx. Neither of these circumstances is sufficient to indicate an acceptance by the town or city of the street as a public street. That question was not presented to the officials who granted the permits, and was not one which they were called upon or were authorized to pass upon so as to bind the city to an acceptance of the street. Other similar acts by public officers are also relied upon by petitioner, but since they all occurred after the filing of the map of 1907 by which the city formally indicated the non-acceptance of the street, they do not require further consideration.

Our conclusion is that it does not appear that Graham street was ever a public street or was closed in this proceeding. Consequently the petitioner can claim no damages as a result of the closing and her petition should have been denied.

A majority of the court while agreeing that the private way known as Graham street was never accepted by the city, and never became in any sense a public street or way, or a

First Department, July, 1917.          [Vol. 179.

part of the city's street system, are of the opinion that the owners of property abutting upon it are entitled to compensation, because the city of New York failed to include it either in the map of 1907 or that of 1911 as a street to be continued. This omission is treated by them as a "closing" of the way under the Street Closing Act of 1895 (Laws of 1895, chap. 1006). It is clear that the effect of thus omitting to include it will not necessarily be to physically close the way so that it may no longer be used as a means of access to the houses fronting upon it, or of egress from those houses through it to Morris Park avenue, upon which it debouches and which is a part of the general street system. Indeed, if the owners of the bed of the so-called Graham street elect to continue its use as a driveway or private approach to their houses I know of no authority vested in the city to compel them to desist and put the property to some other use. In short, after the so-called closing they would have the right to continue to use the way precisely as they do at present. What we have then is a strip of land, not included in any street and which never legally became a public street or way, as to which the owners of the property on either side have agreed *inter sese* that they shall each have the right to use it as a means of approach to their property. To award them compensation for the refusal of the city to recognize and adopt this private way as a part of the public street system would be to impose upon the city, or the property owners within the assessment area, a charge or tax for the private benefit of those who have agreed that the way should be used in common. To construe the Street Closing Act so as to permit this to be done would render it of doubtful constitutionality in this particular. I recognize that the language of the opinion in *Barber* v. *Woolf* (*supra*), upon which the majority opinion rests, if read without regard to the facts before the Court of Appeals, might be construed to cover a case like the present. But the facts of that case were quite different from those presented here. The question there was as to the right to compensation for the destruction of easements, private as well as public, in Seventh avenue, a street which first appeared on a private map filed in 1854, and which was continued and adopted as a city street on a

map filed by the park department in 1879. It thus became, although not actually opened and worked, one of the public streets of the city, the adoption by the park department being equivalent to an acceptance by the city of the dedication attempted to be made when the private map was filed. It was with reference to such a street and the private and public easements over it that Chief Judge ˙ BARTLETT used the language quoted by my brother SHEARN. That language, like that in every judicial utterance, should be read with reference to the facts of the particular case in which it was written. (*Colonial City Traction Co.* v. *Kingston R. R. Co.*, 154 N. Y. 493; *Hogan* v. *Board of Education*, 200 id. 370.) So read the case cited is not an authority for the order appealed from.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied.

LAUGHLIN, J., concurred.

Order affirmed, with ten dollars costs and disbursements.